NAPOLEON, The.    See Case No. 4,500.

NAPOLEON, The (PEASE v.).    See Case No. 10,883.

## Case No. 10,016.

### The NARRAGANSETT.

[5 Ben. 255.] [1]

District Court, E. D. New York.   June, 1871.[2]

COLLISION—STEAMER PASSING STEAMER—RULES OF SUPERVISING INSPECTORS.

1. Two steamboats, the P. and the N., left their piers in the North river nearly together, both bound through the Sound. The P. left her pier first, but took a wider sweep, so that when the two vessels were in the East river, the N. was ahead. The P., moving faster than the N., overhauled her, so that when they arrived at Hell Gate the stem of the P. was ahead of the stem of the N., the vessels, however, being alongside. In this position they entered the Gate together, both vessels holding on, and a collision occurred, in which the P. was injured. Previous to the collision, the supervising inspectors had adopted a rule in reference to such navigation, but it had not been promulgated, and neither party knew of its existence at the time. Held, that the rule was not applicable to the case.

2. It was unlawful for two boats of such size, going in the same direction, to be in the Gate together, and the one which was chargeable with their being there together was responsible for their collision.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 10,018.]

3. The P. had the right to pass the N. in the East river before reaching the Gate. if she could, but not having done so, it was her duty on reaching the Gate, to stop and go astern of the N. As she did not do so, she, and not the N., was liable for the collision.
[Cited in Milliken v. The C. H. Northam, 37 Fed. 240.]

In admiralty.

W. J. A. Fuller, for libellants.
Jos. G. Choate, for claimants.

BENEDICT, District Judge. This action is brought by the owners of the steamboat Providence, to recover for injuries sustained by that vessel in a collision with the steamboat Narragansett, which occurred in Hell Gate on the afternoon of the 24th day of April, 1869.

The controlling facts of the case are not involved in any doubt, and as little doubt exists as to the law to be applied.

The two steamboats left their respective piers in the North river, at nearly the same time, both bound for the Sound. The weather was fair and the tide flood. The Providence moved out in the North river ahead of the Narragansett, but in consequence of vessels off the Battery, took a wide sweep, going over towards Governor's Island and the Brooklyn side, in turning into the East river. The Narragansett took the inner course and passed close to the New York side as she turned. The result was, that when the two vessels headed up the East river along by the Wall street ferry, the Narragansett was some distance ahead of the Providence. Upon this point, which I consider the decisive point of the case, the proof appears conclusive.

As the two vessels continued their courses through the East river, the Providence, which was the larger and the faster boat, gained on the Narragansett, and when the channel west of Blackwell's Island was entered, the Providence had the Narragansett on her port quarter, her own bow being ahead of the bow of the other. Owing, however, to the strong suction occasioned by so large a vessel in that narrow channel, the Narragansett was enabled to maintain about that position, and when the upper end of Blackwell's Island was reached, and the Gate was to be entered, the Providence, although her bow was ahead of the bow of the Narragansett, had been unable to shake off that vessel, but still had her hanging on her port side and quarter. So situated relatively, the vessels entered the Gate and naturally came in contact before they were through, the Narragansett striking the Providence just aft the port paddle-box, and doing the injuries complained of.

I take no time to scrutinize the handling of the two vessels in the Gate, as I hold it unlawful for two boats of this size, going in the same direction, to be in the Gate together, and shall hold that one liable for the consequent damages, which is responsible

for the presence of two such boats alongside each other in that dangerous tideway.

The Providence is the vessel so responsible. When she reached the upper end of Blackwell's Island, and began to near Flood Rock, she was in the face of a passage which she could not lawfully undertake alongside the Narragansett. The Narragansett was still on her quarter, pursuing a lawful course, and not liable to be called on by the Providence to stop. The right of the Providence to keep on terminated at the entrance of the Gate, which she could not, under the circumstances, enter alone, and could not lawfully enter otherwise. Her duty, therefore, was to stop while she could. This duty was imposed upon her by the presence of the Gate immediately ahead, which she could not then go through in the only way the law would permit. Instead of stopping, the Providence kept on, and thus found herself in the position of attempting to pass the Narragansett in the Gate. Having undertaken a dangerous manoeuvre and sustained damages in the attempt, she cannot now call upon the Narragansett to reimburse her.

The case may be stated another way. At the Wall street ferry the Providence was in a position astern of the Narragansett. It being unlawful for two steamers to pass the Gate together, the Providence, when she passed through, was bound to be either in a position astern of the Narragansett or in a position ahead of her. She had an undoubted right to take the latter position, if her power would enable her to do so, but in point of fact she found herself unable to attain that position before she was called on to enter the Gate. Not having been able to place herself in one of the only two positions which the law would permit her to occupy in passing the Gate, she was bound to place herself in the other, by stopping. This is no new law. It was held in the case of The Governor and The Worcester, that a river steamer desiring to pass another one ahead, was bound to select a place for effecting it which would not expose the latter to injury, and if the leading vessel be so placed, that safe room is not left to pass her, the passing boat must stop and await the opening of a sufficient passage [Case No. 5,645].

So in the case of The Rhode Island [Case No. 11,745], it was held that a passing steamer was not entitled to exact from the other anything more than to hold her own course, and not to embarrass or impede the efforts to pass. These cases were referred to and approved by the supreme court of the United States in Whitney v. Dill, 23 How. [64 U. S.] 454, and they furnish the rule which was binding upon these steamers, and according to which the Providence must be held in fault.

It was contended on the part of the libellant, not very strenuously, however, that the amended regulation of the supervising inspectors, which was determined on in January, 1869, prior to this collision, but never promulgated until July after this collision, furnished the rule of navigation to be applied by the court in this case. The collision occurred on the 24th of April, 1869, at which time, as the evidence showed, none of these parties knew of any new regulation; and the copies of the regulation, which the act required should be signed by the inspectors and furnished to every vessel, had never in fact been issued or signed. I am of the opinion that under such a state of facts the regulation referred to cannot be said to have gone into effect. The deliberations of the supervising inspectors are not public.

They have, by law, power to make regulations, which the law also requires them to promulgate over their signatures. Until that is done, I do not think any regulation can be said to have been established as required by the statute. The libellants cannot, therefore, derive any advantage in this action from the new regulation.

A decree must accordingly be entered dismissing the libel, with costs.

[This case was taken to the circuit court by the libellants, on appeal, and the decree of this court affirmed. Case No. 10,018.]