MILLIKEN *v.* THE C. H. NORTHAM.

*(District Court, S. D. New York.   January 9, 1889.)*

1. COLLISION—OVERTAKING AND PASSING VESSELS—INSPECTORS' RULES 7 AND 8.
     The steamer N., overtaking the tug L., with a tow, passing around Negro
 Point in the flood-tide, and a N. W. wind, attempted to pass the L. to the left,
 after a signal of two whistles, which she claimed to have been assented to by
 a reply of two.   The steamer E. C. was at the same time approaching near
 from the opposite direction, having the right of way on the N.'s port side.
 The three boats collided.   The N. struck the L.'s port quarter; the L. having
 veered to port, her tow struck the E. C.'s port waist.   *Held,* (*a*) both to
 blame for violating inspectors' rules 7 and 8.
2. SAME—DANGEROUS CHANNEL—HELL GATE.
     (*b*) That the place was dangerous, and the passage to the left of the L. not
 sufficient for safe navigation, and that the N. was to blame for going on faster
 than the L. before it was plain that the space and the L.'s actual course made
 it safe to attempt to pass her.
3. SAME—CROWDING.
     (*c*) That the L. was also to blame for starboarding her wheel, probably by
 mistake; that she was bound in any event not to crowd upon the N.'s course,

and that, if she had answered with two whistles. she was bound to go to starboard if she could safely do so, there not being sufficient space for the N. to pass to the left.

4. SAME—CUSTOM.

(*d*) That the custom, as well as the inspectors' rules, required an overtaking vessel there to pass to the right.

In Admiralty. Libel for damages caused by a collision between the steamer C. H. Northam and the tug Levering while rounding Negro Point, near Hell Gate.

*A. B. Stewart*, for libelant.

*William J. Kelly*, for claimant

BROWN, J. The Levering, in approaching and going around Negro Point to the eastward, had the right of way as respects the Northam, which was overtaking her. The Northam twice gave a signal of two whistles; and hearing, as her witnesses claim, a reply of two from the Levering, being previously slowed down, she started up to pass the Levering to the left, between her and Ward's island. The witnesses for the Levering say that they did not give any signal of two whistles, but only one signal of three whistles. The weight of evidence shows that the signal of three whistles was given when the Northam was very near, certainly not over a length distant. The Levering was not more than from 200 to 400 feet from Ward's island, and the steamer Elm City was at the same time approaching from the eastward and had the right of way along the Ward's island shore. I think it certain that the Northam under those circumstances would not have started up to pass between the Levering and the Elm City, unless her officers heard, or thought they heard, from the Levering a signal of two whistles, when they were at least considerably further distant than at the time when the signal of three whistles was given; and many witnesses testify that the Levering did give one previous signal of two whistles. Even, however, if this signal of two whistles was given by the Levering, that would not, of itself, excuse the Northam for the subsequent collision in a dangerous passage. *The Greenpoint*, 31 Fed. Rep. 231. Both were to blame for violating the inspectors' rules 7 and 8. *The Dentz*, 29 Fed. Rep. 529.

At the time of the collision the boats were all very close together near the shore. The Levering was hit on her port quarter by the Northam, and was swung round so much that the barge on her starboard side struck the Elm City. The Levering then backed, and the Northam passed on between the other two.

The tide was strong flood; and to the eastward of Negro Point there was a counter-eddy near the north shore. The proof, however, does not satisfy me that that eddy extends so far off from the shore as to have caused the bow of the Levering to swing to port, as all the evidence shows that it did; or that it was the Northam's blow that carried the Levering's bow so far round towards shore that her tow struck the Elm City. Considering, therefore, the distance of the Levering from the Ward's island shore at the time of the Northam's second signal of two whistles, I am

forced to the conclusion that the Levering did not keep her course, as she might and should have done; but by some mistake starboarded her wheel, as several of the witnesses for the Northam testify that they saw she did, instead of keeping it steady, or porting. Although this did not probably affect her actual position in the river but little before the collision, it was a fault, whether she had given a signal of two whistles or not. If such a signal was given by the Levering, then it became her duty to port her wheel, if there was not sufficient room already for the Northam to pass safely to port, provided the Levering could port without any danger to herself. *The Dentz*, 29 Fed. Rep. 525, 529. In this court the Dentz was held liable, because it was considered that the Plymouth Rock had not sufficient room, and because the Dentz, after assenting to her passing, did not aid her as she might have done. In the circuit it was considered that the Plymouth Rock did have sufficient room, and she was therefore held solely liable. See *The Britannia*, 34 Fed. Rep. 558.

The Northam, however, is not, I think, free from blame in attempting to pass inside of the Levering around Negro Point on the strong flood. The place is a dangerous one. Both the tide and the north-west wind tended to set vessels upon the rocks on the opposite side. All naturally wished to keep towards the Ward's island shore, and the tug could not safely have veered much to starboard. With the large steamer Elm City coming west, the passage inside of the Levering was very narrow at best. The Northam, even upon a signal of two whistles, and an answer of two whistles, had no right to demand that the Levering should veer to starboard for the Northam's benefit, to her own danger. There was no difficulty in the Northam keeping slowed down until Negro Point and the Elm City were both passed. She ought to have waited, and not gone forward in a dangerous place at a greater speed than the Levering, until at least the opening and the actual course of the Levering gave clearly sufficient space to pass safely. She did not do so, but went in on too narrow a margin for safe navigation. *The Aurania*, 29 Fed. Rep. 98. The supervising inspectors' rules 7 and 8 virtually forbid passing at all at this point. It had previously been always held dangerous and blamable, (*The Narragansett*, 5 Ben. 255, and cases cited;) and the weight of proof shows that if a steamer is to pass there another steamer that is on the north side of the channel, as the Levering was, she must go to starboard in accordance with rule 8.

Both being, therefore, to blame, the libelant is entitled to a decree for half the damages and costs, with a reference to compute the amount, if they are not agreed on.