## Case No. 5,321.

### The GENERAL WILLIAM McCANDLESS.

[6 Ben. 223.] [1]

District Court, S. D. New York. ·Nov., 1872.

COLLISION IN EAST RIVER — STEAMBOAT FOLLOWING ANOTHER.

1. Two steamtugs, the U. and the McC., were going down the East river, the U. being ahead. The McC. gained on the U., so as to lap her starboard side. A ferry-boat coming up behind them passed to the starboard of both tugs, and, as she was passing, the port bow or stem of the McC. came in contact with the starboard quarter of the U., and she shot off to starboard, across the bows of the McC., and struck the port side of the ferry-boat, receiving injuries, to recover for which a libel was filed, in her behalf, against the McC. No fault was charged by either party against the ferry-boat: *Held*, that the case was one to which articles 17 and 18 of the act of April 29, 1864 (13 Stat. 61), apply. It was the duty of the McC. to keep out of the way of the U., and the duty of the U. to keep her course.

2. As the evidence showed that the U. kept her course, it followed that the McC. was in fault.

3. The U., having the right of way, and having no reason to suppose that the McC. would hit her, was not bound to slow, on the approach of the ferry-boat.

4. Whatever mistake the U. made in not stopping and backing, was, at most, an error of judgment, under circumstances of danger brought about by the McC., and was not, therefore, to be imputed to the U. as a fault.

In admiralty.

Beebe, Donohue & Cooke, for libellants.
Wilcox & Hobbs, for claimants.

BLATCHFORD, District Judge. This libel is filed to recover against the steamtug General William McCandless the damages sustained by the libellants, as owners of the steamtug Unit, in consequence of a collision which took place on the 3d of May, 1871, in the East river, between the Unit and the ferry-boat Commodore Perry, by which the Unit was damaged. The Unit started from North Fourth street, Williamsburgh, bound to the vicinity of pier 12, East river, in a strong flood tide, between five and six o'clock in the afternoon. She ran over to the New York shore, and down in an eddy there, and then crossed over to the Brooklyn shore, from the point of Corlaer's Hook, reaching the Brooklyn shore about the lower end of the Navy Yard, and from there ran down along the Brooklyn shore for half a mile, to about off Adams street, Brooklyn, where the collision occurred. The McCandless went down along the New York shore astern of the Unit, and started to cross to the Brooklyn shore astern of the Unit, but held a more westerly course across than the Unit did, and so gained on the Unit as to lap her starboard side a short distance below where the Unit reached the Brooklyn shore. The ferry-boat was on a trip from South Seventh

street, Williamsburgh, to Roosevelt street, New York. She was behind both of the tug-boats, and overtook them, and passed to the starboard of both of them. As she was passing, the port bow or stem of the McCandless came in contact with the starboard quarter of the Unit, and the Unit shot off to starboard across the bows of the McCandless, and struck the port side of the ferry-boat, under the guard of the ferry-boat, abaft her wheel. The ferry-boat was a side-wheel steamboat, and the tugs were both of them screw propellers. The Unit was seriously injured.

The libel alleges, that the course of the Unit was along the Brooklyn shore, and about one boat's length from the end of the piers; that, when the McCandless, with her stem, lapped the starboard quarter of the Unit, she was so close as to be within the suction of the Unit; that the McCandless gradually gained on the Unit, until they were nearly abreast, side by side, the McCandless still keeping close to the Unit and within her suction; that, when the bows of the ferry-boat had arrived at a point a little ahead of the Unit, the McCandless suddenly dropped back, so that her stem came alongside of the starboard quarter of the Unit, and her bow suddenly turned, either by the action of her wheel, or the suction of the Unit, against the starboard quarter of. the Unit, pressing the bows of the Unit around against the port side of the ferry-boat; that the headway of the McCandless was not stopped until after the Unit had struck the ferry-boat; and that the collision was caused by the carelessness and negligence of those navigating the McCandless, in not keeping further away from the Unit, in keeping within her suction, in dropping back, and either sheering her stem on the starboard quarter of the Unit, or permitting the same to be so sheered, in shoving the stern of the Unit around so as to throw her stem against the ferry-boat, and in not stopping and backing before the Unit struck the ferry-boat.

The answer avers, that the Unit headed down the river along the Brooklyn piers before the McCandless did so; that, after both vessels had headed down, they ran about side by side, always lapping each other, the McCandless preserving a uniform course of about 150 feet from the Brooklyn side, and the Unit making a zigzag course in and out and near the end of the piers; that when the ferry-boat's stem had commenced to lap the starboard quarter of the McCandless, the McCandless was immediately slowed; that thereupon the Unit took a sudden sheer to the right; that then the helm of the McCandless was ported and she was immediately backed; that, before the McCandless could fall back, the helm of the Unit was put hard a-starboard, throwing her stern around so that it hit the port bow of the McCandless. and the course of the Unit was, in consequence, changed towards the course of the

ferry-boat, so that she collided with the ferry-boat; that the collision was caused solely by the improper and unskilful navigation of the Unit, in not preserving a uniform course down the river, in not slowing on the approach of the ferry-boat, in not stopping and backing when it was discovered that the ferry-boat was approaching and might close in upon them, in not having the pilot or a competent person at the wheel, she being piloted by an incompetent and inexperienced deck hand, and in starboarding her helm and thus throwing her stern around and against the port bow of the McCandless; that the McCandless slowed as soon as it was found that the ferry-boat would pass the two tugs to the starboard; that, as soon as it was ascertained that the Unit, from her change of course, was closing in on the ferry-boat, the McCandless fell back, which was the only proper course; that, in doing so, she would not have touched the Unit, but for the sudden starboarding of the Unit's wheel; and that those directing and controlling the McCandless did everything in their power to avoid the collision, and it was in no way the fault of the McCandless or of those controlling her.

This is clearly a case to which articles 17 and 18 of the act of April 29, 1864 (13 Stat. 61), apply. The McCandless was overtaking the Unit. and it was her duty to keep out of the way of the Unit. It was equally the duty of the Unit to keep her course. The McCandless did not keep out of the way of the Unit. She does not set up in the answer that what happened was due to any improper management or action on the part of the ferry-boat. Her excuse is based on alleged improper conduct on the part of the Unit. The evidence shows, however, that the Unit kept her course, and did not make a zigzag course, and did not starboard her helm, as alleged in the answer. It follows, that the McCandless was in fault.

But, in addition to this, the evidence shows positive fault on the part of the McCandless. She ought to have kept farther away from the Unit, and not have got within her suction, and she ought to have stopped and backed sooner than she did.

The only question is, as to whether the Unit neglected any precaution required by the special circumstances of the case. It is alleged that she ought to have slowed on the approach of the ferry-boat, and ought afterwards to have stopped and backed. But she had the right of way, and had no reason to suppose that the McCandless would hit her, or would not stop and back in season to avoid all danger. Whatever omission the Unit made, in not slowing, stopping and backing, was, at most, an error of judgment, under circumstances of danger brought about wholly by the fault of the McCandless, and is, therefore, not to be imputed as a fault, as between her and the McCandless. If the ferry-boat had been damaged and

were suing the Unit, a different rule might prevail.

There must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by the libellants.