## The City of Brockton.[1]

## The J. C. Hartt.

## Cornell Steam-Boat Co. v. The City of Brockton.

## Old Colony Steam-Boat Co. v. The J. C. Hartt.

*(District Court, E. D. New York. February 5, 1889.)*

Collision—Between Steamers—Overtaking Vessel—Passing Too Near—Suction.

The steam-tug H. was going out of the bay of New York towards the Scotland light-ship. Overtaking her was the steam-boat B. As the B. came up with and began to draw ahead of the H., the latter gave a sudden sheer, and went into the side of the steamer. Both vessels were damaged, and cross-libels were filed. It appearing that the H.'s sheer was caused by the suction from the wheels of the B., *held*, that the collision was caused by the failure of the B., as the overtaking vessel, to come up along-side of the H. at a sufficient distance to pass her in safety.

In Admiralty. Cross-libels for damages by collision.

*R. D. Benedict*, for the J. C. Hartt.

*Shipman, Barlow, Larocque & Choate*, for the City of Brockton.

Benedict, J. These actions arose out of a collision which occurred between the steam-boat City of Brockton and the steam-tug J. C. Hartt, in broad daylight, in the open sea, just outside of Sandy Hook, on the 29th day of September, 1887. Each vessel charges the other with fault causing the collision; and in order to make the facts plain 59 witnesses were examined before the court. The testimony of these witnesses, written out by the stenographer, has been since examined with care. On some points it is a mass of contradictions, in others it is harmonious. A careful analysis of it has enabled me to see clearly the proper disposition to be made of the cases. Upon the evidence the following facts are beyond dispute: Both vessels were bound for a yacht-race, in which the yachts were to start from the Scotland light-ship. They were the leading vessels of a large fleet bound upon the same errand. When Sandy Hook was passed, and the South Channel reached, the Hartt was ahead of the Brockton, both following the channel. The Brockton, being the faster vessel of the two, soon overtook the Hartt, and attempted to pass her on her starboard hand. While passing, and when the bow of the Brockton, then running at 14 or 15 miles an hour, had reached ahead of the bow of the Hartt 100 feet or more, the two vessels came in collision, the bow of the Hart striking first the port paddle-box of the Brockton, and then running under the Brockton's port-guard, where her nigger-head broke in the sponsons of the Brockton, and she was near being capsized, most of her passengers being thrown into the sea. Before the Brockton's

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

speed could be slowed the Hartt received considerable injury, and some damage was done to the Brockton. The pleadings on each side charge that fault in the other caused the collision. The Brockton's pleadings aver that while the Brockton was passing the Hartt, at a distance of about 250 feet, on a nearly parallel course, and after the pilot-house of the Brockton had passed the bow of the Hartt, the Hartt changed her course more to the southward, to pass under the stern of a yacht that was standing across the bows of the Hartt, and then rapidly sheered towards the Brockton, and struck her guard about 46 feet abaft the shaft on her port side. The same pleadings assert that no collision would have occurred if the Hartt had straightened up on her course after passing the yacht. The pleadings of the Hartt aver that while the Hartt was proceeding down the south channel, heading south-south-east upon her proper course, the Brockton undertook to pass her on her starboard side, but did not come up at a sufficient distance from the Hartt to pass in safety, and before she got by the Hartt starboarded her wheel, and attempted to cross the bows of the Hartt, then still on her course of south-south-east; that the wheel of the Hartt was then immediately starboarded, and her engine stopped and backed, notwithstanding which she was struck by the Brockton, and seriously injured.

Inasmuch as it is conceded that the Brockton was the overtaking vessel, and consequently charged with the duty of passing the Hartt at a safe distance, it will be convenient to consider first the testimony adduced in behalf of the Brockton, to prove the fault charged upon the Hartt in the Brockton's pleadings; for, if the collision be found to have occurred without any porting on the part of the Hartt, the Brockton must be held responsible, whether the collision arose from the starboarding of the Brockton's wheel just before the collision, or from the fact that the course upon which the Brockton undertook to pass the Hartt was not sufficiently distant from the Hartt to enable the Brockton to pass in safety. And first it should be observed that in the Brockton's pleadings the Hartt is charged with having changed her course twice, and it is averred that these changes were made while the Brockton was passing, and after the pilot-house of the Brockton had passed the bow of the Hartt. The first is alleged to have been made in order to get under the stern of a yacht which crossed the Hartt's course ahead of her; the second to have been a rapid sheer, which carried the Hartt head on, or nearly head on, into the Brockton. In regard to these movements charged upon the Hartt, the testimony leaves it beyond dispute that the first change on the part of the Hartt which the pleadings identify as made to get under the stern of a yacht was not made while the Brockton was passing the Hartt. The Hartt did sheer to the southward to pass under the stern of the yacht, and, according to the proof, straightened up again; but this was before the Brockton had come up to the Hartt. The movement was without effect to embarrass the Brockton in her endeavor to pass the Hartt, and had nothing to do with the collision which occurred while the Brockton was passing the Hartt. Several witnesses called by the Brockton prove this. Such is the testimony of Chase and of Battey, who were in the Brockton's

pilot-house; and so say Ludlam, and Rotch, and Harrison. The testimony of Fletcher, who was on the Perseus,—a vessel astern of both the Brockton and the Hartt,—and who is called in behalf of the Brockton, is to the same effect. In regard to the second movement on the part of the Hartt charged in the Brockton's pleadings, testimony is given by many witnesses called in behalf of the Brockton. Among these, two of the most intelligent observers are Charles Francis Adams and Charles Choate; the latter the president of the Old Colony Steam-Boat Company, to which corporation the Brockton belongs. These two witnesses were standing together on the deck of the Brockton, on the port side, between the pilot-house and the paddle-box, in full view of the Hartt as the Brockton passed. These witnesses paid no attention to the Hartt, and know nothing of her movements prior to the time when the paddle-box of the Brockton was nearly abreast of the pilot-house of the Hartt; from that time, however, they observed her with care. According to the testimony of these two witnesses, the Brockton was passing the Hartt 300 feet distant, as Mr. Adams says, 150 feet, as Mr. Choate says, from the Hartt. The latter is the more correct estimate. Several witnesses put the distance at 100 feet, some at 75 feet. As the two witnesses looked at the Hartt she gave a sudden lurch towards the Brockton, which shortened the distance between the two vessels about one-third. The Hartt then straightened up. Then she again lurched towards the Brockton, and instantly the collision occurred. The Hartt was a tug 125 feet long. The Brockton's length was 283 feet. The character of the movements of the Hartt, as described by these two witnesses, considering the relative positions of the two vessels, has satisfied me that the change of course on the part of the Hartt observed by them was not caused by a porting of the Hartt's wheel, but, so far as the Hartt was concerned, was involuntary. The fact testified to by Mr. Adams, Mr. Choate, and also by many other witnesses, that after the first lurch the Hartt straightened up, is conclusive to show that the Hartt was under a starboard instead of under a port helm. And it is impossible to believe that the pilot of the Hartt, when his vessel had been suddenly carried, no matter by what force, off her course, and within 50 or 100 feet of a steamer like the Brockton, then passing at high speed on his starboard hand, and when he had straightened her up, would then put his wheel hard a-port. Such action at that time on the part of the pilot would mean swift destruction for his boat. No sane man would have ported his wheel under those circumstances. It was something other than a port helm that caused the Hartt to go off her course in the manner described. Nor is there direct evidence of a porting from those on the Brockton. Witnesses on the Brockton have inferred from the movements of the Hartt while the Brockton was passing that the wheel of the Hartt had been ported, but the improbability of such action on the part of the pilot under such circumstances is too great to permit such an inference, if the movements of the Hartt can be reasonably attributed to any other causes. Moreover, the language used to describe the movement of the Hartt does not indicate that the Hartt was acting under a port helm. Mr. Adams and Mr. Choate

describe it by the word "lurch." Says Mr. Adams: "She seemed to, lurch right over towards us; it wasn't a case of gradual converging." Another witness speaks of it as "a grand swoop right around." Another says: "She made a dive for us." Again, Mr. Adams says: "She seemed to get wild in her steering. She rolled, as it were, first towards us, then a little off, then a roll towards us. She seemed to give a wild lurch. They were lurches rather than sheers." Such language does not describe a change of course effected by the rudder, but points strongly to the presence of some other force outside of the Hartt, to which her change of course should be attributed. And such a force was present, namely, the force of currents created in the water by the powerful action of the Brockton's wheels driving so large a vessel through the water at high speed. Currents of water more or less strong are necessarily created by a vessel like the Brockton moving at high speed. They will differ according to the locality, and are largely affected, no doubt, by the depth of water. There is evidence that their power is increased when two vessels of about the same speed are passing each other. What the depth of water or the configuration of the bottom was at the place where the Brockton's wheels approached the bow of the Hartt is not proved. But the extent and power of the current actually created by the Brockton seems to me to be shown by what the Hartt did as the wheels of the Brockton neared her bow. It is also proved by direct evidence. Ludlam, a man of experience as a master of steam-ships, who saw the collision, and who was called as a witness on behalf of the Brockton, testifies that the Hartt's wheel was starboarded, but her stern was set off the Brockton by a current made by the Brockton's wheel, there setting away from the Brockton, while her bow was being pulled towards the Brockton by the draught of the Brockton's wheel. He says: "The suction and the power of the Brockton's wheel in motion is tremendous. There is not a centrifugal pump in the world that would compare with the water from that bucket, which has a throwing force of tremendous area." Against this there is nothing but testimony to the effect that the Brockton has frequently passed vessels without affecting them by her suction.

As it seems to me, therefore, the testimony given by the witnesses called in behalf of the Brockton warrants the conclusion that the change of course on the part of the Hartt, testified to by Mr. Adams and Mr. Choate, and to which they attribute the collision, was not caused by the fault of the Hartt in porting her helm, as charged in the Brockton's pleadings, but was caused by the fault of the Brockton, charged in the Hartt's pleadings, namely, either by her sheering across the Hartt's bows, or "that she did not come up to the starboard side of the Hartt at a sufficient distance from the Hartt to pass in safety." Several general considerations tending to support this conclusion, and suggested by the testimony, may be mentioned. In the first place, the testimony of those in the pilot-house of the Hartt makes it plain that the Hartt's bells were rung, and her helm starboarded simultaneously, that both occurred immediately upon the sudden change of relation in the courses of the two vessels, and the collision was then inevitable. If a fault of the Hartt

caused the collision, it must therefore have been before her bells were rung. But no fault previous to that time is charged in the pleadings, except the change when the yacht was passed, and that change, as has been pointed out, had no effect to cause the collision in question. In the next place, no sufficient reason for any porting on the part of the Hartt while the Brockton was passing has been suggested. An intention to cross the Brockton's bows cannot have existed, for the evidence is that the Hartt had slowed her speed before the Brockton caught up to her, and at the time of the Hartt's rapid sheer the bow of the Brockton was ahead of the Hartt some 50 or 60 feet. One of the witnesses on the Brockton supposes that the Hartt ported "because she wanted to come and take a look at us." The answer is that she was near enough to the Brockton for any such purpose without porting. Moreover, when by the first lurch the Hartt had been carried near the Brockton, and when she had straightened up again, no such reason, or any other that I can imagine, would justify a porting of the Hartt's helm. To the suggestion that the Hartt ported with a view of getting into the Brockton's wake, close under her stern, the answer is that the change made by the Hartt could not possibly carry her clear of the Brockton's stern. Collision was imminent before the second lurch came, and the lurch was so sharp that the master of the Brockton, who seems not to have seen the first lurch, but who, on seeing the second lurch, ran to the bells, some 40 feet distant, intending to stop the Brockton, failed to reach them before the collision took place. Indeed, the movements of the Hartt were so eccentric as to cause in the minds of several on the Brockton the belief that her tiller-ropes had parted. In the minds of these witnesses it was want of helm on the part of the Hartt, rather than the porting of her helm, that brought the vessels in collision. There was no parting of the Hartt's tiller-rope, but the belief in some accident shows the extraordinary character of the movements of the Hartt; which, it may be here remarked, occurred within the space of not to exceed 30 seconds.

If notice should be taken of some testimony from the Brockton to the effect that the Hartt steered badly as the Brockton came up to her, one witness saying that she fell off 100 feet on every sea, it can be said that other witnesses called by the Brockton testify to the contrary. Among these is Ludlam, who says that the Hartt steered particularly well as to steadiness in the sea; and, besides, if the Hartt was seen to be steering so wildly, that was a reason for keeping further away from her than the Brockton did. Here, as well as anywhere, may be noticed the testimony of some witnesses from the Brockton, who seem to speak of a sheer of the Hartt after the yacht had passed, and before the rapid sheer seen by Mr. Adams and Mr. Choate. As to this testimony, it is sufficient to say that it is uncertain, is contradicted by other witnesses from the same side, and is without importance in view of the pleadings. The Brockton's pleadings complain of two movements of the Hartt, and only two,— one when she passed the yacht; the other, the rapid sheer seen by Mr. Adams and Mr. Choate. No other change is alluded to in the pleadings. As bearing upon the probabilities of the case, it may be noticed that the

Brockton was a new boat, famous for speed. She had come off the Fall River line to carry a party of guests to the yacht-race. In going down the bay she had distanced all vessels, and at the time of the collision she was passing the Hartt in sight of the fleet. The circumstances were calculated to excite that well-known inclination to shave close, which is so fruitful of collisions. The supposition that on this occasion the pilot in charge of the Brockton—who, by the way, was navigating her for the first time—yielded to the temptation above alluded to, would be in harmony with a large portion of the testimony given in these cases. Adding these considerations to what appears to me to be shown by the Brockton's witnesses, a decision adverse to the Brockton upon the controlling question of the case, namely, whether the collision was caused by a porting of the Hartt's helm while the Brockton was endeavoring to pass her, must follow. Such a decision is strongly supported by the testimony produced in behalf of the Hartt. In this testimony there is much evidence, from disinterested as well as interested observers, in support of the assertion in the Hartt's pleadings that the Brockton made a sudden sheer across the Hartt's bows. Between this testimony from the Hartt and the equally positive testimony to the contrary from the Brockton, I find it unnecessary to decide. It might, perhaps, be possible to reconcile the apparent contradiction by supposing that the sudden pulling of the Hartt's bows out of her course by the suction created just in advance of the Brockton's wheels led those on the Hartt to believe that they saw a sudden change in the Brockton's course. But into this inquiry I do not enter, for whether the collision was caused by a sudden sheer by the Brockton a moment before the collision, or by her taking and holding a course which carried her so near the Hartt as to overpower the Hartt by currents of water caused by her wheels, the responsibility of the Brockton is clear if there was no porting of the Hartt's helm after the Brockton began to pass. Setting aside, therefore, the testimony of the Hartt's witnesses going to prove a sudden sheer by the Brockton, there remains in that testimony convincing evidence that the change of course on the part of the Hartt, to which Mr. Adams and Mr. Choate testify as the cause of the collision, was not caused by a porting of the helm of the Hartt, but was caused by the currents of the Brockton. Thus is confirmed the conclusion arrived at from a consideration of the Brockton's testimony, that the fault to which the collision is to be attributed was the fault of the Brockton in attempting to pass the Hartt as she did. The Brockton was the overtaking vessel; she had the Hartt in plain sight; no other vessels were near to embarrass her. There was no reason why she should not have passed the Hartt at a safe distance, and yet she passed so near as to overpower the Hartt by the currents she created, and to force the Hartt into collision. For these reasons my decision is that in the action brought by the Brockton the libel be dismissed, and in the action brought by the Hartt there be a decree in favor of the libelant, with an order of reference to ascertain the damages.