## THE CITY OF CLEVELAND.[1]

### THE JOHN MARTIN.

### NESTER v. THE CITY OF CLEVELAND and THE JOHN MARTIN.

#### (District Court, E. D. Michigan. December 27, 1890.)

1. COLLISION—CONFLICTING EVIDENCE—PROBABILITIES—DECISION.
   In a collision case, where there is a sharp conflict in the testimony given by the respective crews, the court will dispose of the matter rather by a consideration of the conceded facts and the probabilities of the situation than by an attempt to reconcile, or determine the preponderance of, the testimony.

2. SAME—SUDDEN SHEER—SUCTION OF PASSING VESSELS.
   The suction of two vessels passing each other in opposite directions is not very powerful, especially if there is no great difference in size, and is too brief in its operation to account for a sudden sheer by one which brings her into collision with the tow of the other.

In Admiralty. Libel by the owners of the steamer Keweenaw against the steamer City of Cleveland for a collision. Libel dismissed.

Moore & Canfield, for libelants.

H. H. Swan and Harvey D. Goulder, for claimants.

BROWN, District Judge. We are agreed in this case. At the time it was first argued there was some slight difference between myself and the nautical assessors, and some slight differences between the assessors themselves, and upon that account I held the case for further reflection. I have been persuaded, however, by the testimony that was taken yesterday, and by the opinions of the gentlemen who have consented to sit with me in this case, that the nautical assessors were right, and, as all four of them agree among themselves and with me, we think that we will not defer the decision.

[1] This opinion was delivered orally, and having been reduced to writing, and revised by Mr. Justice Brown, was published as a footnote to the case of The Alex. Folsom, 6 U. S. App. 167, from which the opinion is here reprinted.

The facts are that the City of Cleveland, with the John Martin in tow, had, just prior to this collision, turned around in the bight below Rains' dock, and it is claimed, on the one side, that, in turning about to come up, they were pointing towards the Canadian shore. On the other side, it is claimed that they were pointing in towards the American shore. Now, we think that, in view of the fact that all the commerce of the St. Mary's river passes between these two buoys, and of the further fact that the collision, by the uncontradicted testimony, did occur above Rains' dock, the most probable theory is that the City of Cleveland had so far resumed her course as to make the signal of two whistles a proper signal, and that she was proceeding, substantially as claimed by the respondents here, on a course which would have taken the tow between these two buoys. I say in this case, as I have said in two or three others, that I care very little for mere preponderance of evidence, and that, in a conflict of testimony in a collision case, I determine the case from the conceded facts and probabilities, rather than from any attempt to reconcile the conflicting testimony of the crews. It is a notorious fact that seamen in collision cases are very strongly biased in favor of their own vessels,—in favor of the parties who call them; and I do not think myself that their testimony in regard to disputed facts is of any great weight, as against the probabilities of the case. Now, then, what in all probability occurred? I cannot have any doubt that the City of Cleveland did take the usual course above Rains' dock, which would lead her up the mid-channel, or a little to one side. There was no reason for her deviating from that course at all. Probably while she was below the bight she was pointing towards the Canadian shore, but she certainly would not keep that course in the face of the approaching tow. She would deflect from that course the moment she passed Rains' dock, and we have no doubt that she took the usual and proper course on leaving that dock. Now, then, we should be loath to say that she might not proceed on that course without waiting for the other vessels to come down. The channel is not so narrow but that, with proper precaution, it was entirely prudent for the tows to pass at that point. We do not think she was bound to wait until the Keweenaw's tow came down. Had the cut been a narrow one, such as the Neebish, and with the rapidity of that current, it would seem that prudence might require that she should stop. But it does not seem to me that there was any requirement that she should come to a standstill at that point, to allow the down tow to pass them. There is no question that the two steamers passed at an entirely safe distance; nor is there any question in our minds that it is a safe distance enough for steamers proceeding at the usual rate of speed in that passage, between these two buoys. With proper management there is no danger in vessels passing within 50 feet of each other; but it did require prudence and care, —unusual care, perhaps, considering the narrowness of the channel.

There is no question in our minds that this collision was caused by the sheering of the Keweenaw, and the only question is what caused that sheer. Now, the burden of proof is upon the libelant.

It is claimed here—and that is practically the only claim—that the City of Cleveland was proceeding at too high a rate of speed, and was passing too near the Keweenaw, and that that created a suction which drew the Keweenaw into the tow, and brought about the collision. We think it, however, more. probable that the sheering was caused by a wrongly-executed order, because it is in evidence here that the wheel chains of this barge were not crossed, but straight. The testimony of the man at the wheel is certainly not persuasive upon that point. His testimony at one time indicates that he did put it the wrong way, but he subsequently corrects himself, and I am somewhat unwilling to say that he did turn his wheel the wrong way; but it seems to us that, if the wheel had been promptly put to starboard, there would have been no danger from the suction of these passing vessels.

The testimony given yesterday, and the experience of my brethren here, lead me to believe that the suction of two vessels passing each other is not very powerful. It is too short to have any particular effect upon the action of the two vessels, unless one is much larger than the other; whereas, if they are going in the same direction, and passing near each other, it has a very powerful effect to deflect the weaker vessel from her course. If one of these vessels had been very large, and the other comparatively small, it is possible the suction would have had some effect; but the Keweenaw, as I understand, was a heavily laden vessel, and it seems to us that if the wheel had been promptly put to starboard, as it should have been, considering the proximity of the tows, there would have been no danger at all. The fact that the order was given to starboard, hard a-starboard, as the Keweenaw passed the City of Cleveland, would seem to indicate that there was an immediate necessity for action, which had not up to that time been had. If this action had been taken before,—and a competent wheelsman would have known that the passing of the City of Cleveland would create some suction,—I say, if this action had been taken before, there is no doubt that this collision would have been avoided. At any rate, we think that the libelant has not sustained his case by a preponderance of proof. I thought at one time that I might dispose of this case as an accident occurring through an inscrutable fault, but my brethren here are so firmly persuaded of the fault of the Keweenaw that I prefer to dispose of the case on that ground.

Therefore the libel will be dismissed.