THE NORTH STAR.

THE NOURMAHAL.

(District Court, S. D. New York. May 18, 1904.)

1. COLLISION—VIOLATION OF RULES BY OVERTAKING STEAM VESSEL—SUCTION.

The steamship North Star, 320 feet long, with 46 feet beam, and of 3,159 gross tons, overtook and tried to pass the steam yacht Nourmahal, 247 feet long, 30 feet beam, and 768 tonnage, in Swash Channel, in rather shallow water. She was going with the tide, and at a speed of about 17

¶ 1. Collision—overtaking vessels—see note to The Rebecca, 60 C. C. A. 254.
132 F.—10

miles through the water. She came up without giving any signal of her intention to pass, as required by Inland Navigation Rules, art. 18, rule 8, Act June 7, 1897, c. 4, § 1, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2882], and within about 100 feet to the starboard of the yacht. When partly past, the yacht left her course, and, although her helm was put to starboard, and then hardastarboard, her stem came into collision with the port side of the steamship. *Held*, that the collision must be attributed to the suction of the larger vessel, and that she was solely in fault, for violation of the rules.

In Admiralty. Cross-actions for collision.

Wing, Putnam & Burlingham, for Nourmahal.

James J. Macklin, for North Star.

ADAMS, District Judge. These actions arose out of a collision which occurred in the Swash Channel on the 28th of September, 1901, a little after 4 o'clock P. M., between the steam yacht Nourmahal; a screw propeller yacht, and the steamship North Star. Both vessels were returning to New York, after having been outside to witness one of the International Yacht Races. The collision happened about half way between Romer Beacon or Monument and Bell Buoy on the north side of the channel, the bowsprit and stem of the yacht coming in violent contact with the port side of the steamship, abaft amidships, about a third of the North Star's length from her stern, causing considerable damage to both vessels. The contact caused the yacht to heel about 30 degrees to port. The tide was flood, causing a current of about a knot and a half.

The North Star was $\frac{3159}{1999}$ tons, 320 feet long and 46 feet beam. She drew 13 feet forward and 15 feet aft. The Nourmahal was $\frac{768}{552}$ tons, 247 feet long, including bowsprit, and 30 feet beam. She drew 10 feet forward and 16 feet aft.

The vessels' accounts differ somewhat and each charges the other with faults leading to the collision.

The yacht against the steamship, as follows:

"Fifth. Said collision and damage were not due to any fault on the part of the libellant, or of those in charge of the yacht Nourmahal, but were wholly due to the faults of those in charge of the North Star; in proceeding too fast in the Channel; in trying to pass the yacht at a dangerous place; in not giving the signals required by the Inland Regulations, nor any alarm whistles; in not making allowance for the tide; in trying to pass too near; in not asking for and waiting for the yacht's assent; in not keeping well clear of the yacht, and in crowding upon her, and in not avoiding the yacht; in not stopping and dropping astern; and in not taking proper and seasonable precautions to keep out of the way of the yacht; and in other particulars, which libellant will show on the trial of this cause."

The steamship against the yacht, as follows:

"(1) In sheering towards the said Steamship 'North Star.'
(2) In not maintaining her course.
(3) In not keeping a proper and sufficient lookout.
(4) In that those in charge of her navigation were incompetent."

The testimony shows that these steamers and the City of Lowell, had outspeeded many of the vessels attending the race. They came into Gedney Channel a little before 4 o'clock P. M., the Nourmahal being then in the lead, with the North Star following her, and the

City of Lowell behind the North Star. The Lowell shortly passed the North Star and as the yacht rounded into the Swash Channel, she had the Lowell close on her starboard quarter, and the North Star somewhat behind. The yacht had a speed of about 15 miles an hour and the North Star about 17, exclusive of the effect of the tide. The Lowell was faster than either. As the yacht rounded into the Swash Channel, a small sloop was met. She was standing across the channel to the westward. The yacht stood over to the westward and crossed the sloop's bows. At this time, the Old Dominion steamer Hamilton, bound out, approached and exchanged a signal of two whistles with the yacht and they passed each other starboard to starboard, with a clearance of about 100 feet. The yacht then straightened and proceeded more northerly to her range course and passed to the northward and eastward of the Lump or Palestine Buoy.

The North Star was in the meantime approaching from behind. She was passed by the Lowell, which drew ahead of her before reaching the Swash Channel. The North Star passed the Hamilton port to port, shortly after the yacht had passed the latter. The yacht was then ahead of the North Star, about two of the latter's lengths, and was all the time slightly approaching the Romer Bank. The North Star without any signal to the yacht, attempted to pass between her and the Romer Bank. The vessels were then apparently something more than 100 feet apart but were drawing slightly nearer and when the North Star's stern reached a point about opposite the bridge of the yacht, the latter, being influenced by the North Star's suction, turned towards her and the vessels came together, notwithstanding a starboard, then hard-a-starboard, helm on the part of the yacht. The collision took place about 150 yards from the Romer Bank. There was no change of course on the part of the North Star. The North Star stopped just after the collision but, finding that the yacht was in no danger proceeded. The yacht stopped her engines just before the collision and proceeded ahead just after it.

The existence of any suction that would tend to produce this collision, has been strenuously denied by many witnesses for the North Star, but that it existed and had the effect here of drawing the yacht towards her when the vessels had approached within about 100 feet of each other, I think there can be no doubt. It has been noted and discussed in many collision cases. The Narragansett, 5 Ben. 255, 256, Fed. Cas. No. 10,016, affirmed 10 Blatchf. 475, Fed. Cas. No. 10,018; The William McCandless, 6 Ben. 223, 226, Fed. Cas. No. 5321; The City of Brockton (D. C.) 37 Fed. 897, 899; The Alexander Folsom, 52 Fed. 403, 3 C. C. A. 165; The City of Cleveland (D. C.) 56 Fed. 729; The Ohio, 91 Fed. 547, 551, 33 C. C. A. 667; The Mesaba (D. C.) 111 Fed. 215; The Fontana, 119 Fed. 853, 857, 56 C. C. A. 365; The Nevada, 106 U. S. 154, 156, 1 Sup. Ct. 234, 27 L. Ed. 149. Of course, the extent of suction depends upon the circumstances of each case. Here, the North Star was proceeding at high speed in comparatively shallow water and in close proximity to the bank of a shoal, on her starboard hand. Her displacement was great and the effect of the inrush of water to fill the space she had

occupied as she passed, must necessarily have been considerable upon the smaller and weaker vessel. The movement of the yacht towards the vacated space was distinctly felt on board, and the collision can be accounted for in no other way, than as a result of suction.

Inland Rules, art. 18, rule 8 (Act June 7, 1897, c. 4, § 1, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2882]), provides:

"Rule VIII. When steam-vessels are running in the same direction, and the vessel which is astern shall desire to pass on the right or starboard hand of the vessel ahead, she shall give one short blast of the steam-whistle, as a signal of such desire, and if the vessel ahead answers with one blast, she shall put her helm to port; or if she shall desire to pass on the left or port side of the vessel ahead, she shall give two short blasts of the steam-whistle as a signal of such desire, and if the vessel ahead answers with two blasts, shall put her helm to starboard; or if the vessel ahead does not think it safe for the vessel astern to attempt to pass at that point, she shall immediately signify the same by giving several short and rapid blasts of the steam whistle, not less than four, and under no circumstances shall the vessel astern attempt to pass the vessel ahead until such time as they have reached a point where it can be safely done, when said vessel ahead shall signify her willingness by blowing the proper signals. The vessel ahead shall in no case attempt to cross the bow or crowd upon the course of the passing vessel."

This rule was clearly violated by the North Star, which, though an overtaking vessel, gave no signal whatever, and those navigating the yacht were in no wise warned of the steamship's approach or intention, and no opportunity was given the yacht to consent or object to the passing.

Decree for the libellant Astor, with an order of reference. Libel of the Maine Steamship Company dismissed.