**THE HENRY W. OLIVER. THE JOHN ERICSSON. THE MANILA.**

(District Court, N. D. Ohio, Eastern Division. December 30, 1912.)

No. 2,450.

1. COLLISION (§ 51*)—OVERTAKING VESSELS—SUCTION.
    Suction is a force recognized by the courts, and to be recognized and guarded against by an overtaking vessel.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 57–61; Dec. Dig. § 51.*]

2. COLLISION (§ 56*)—OVERTAKING VESSELS—RULES GOVERNING.
    Under the navigation rules 20 and 22 for the Great Lakes (Act Feb. 8, 1895, c. 64, § 1, 28 Stat. 645 [U. S. Comp. St. 1901, p. 2891]), it is the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

duty of an overtaken vessel to keep her course and speed, and of the overtaking vessel to keep out of her way; and, if a collision occurs, the burden of proof rests on the overtaking vessel.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 56.*]

3. COLLISION (§ 53*)—OVERTAKING VESSELS—FAULT.

A collision between a steamship with a barge in tow, passing down through the lower channel in Lake St. Clair at night, and an overtaking steamship, and a resulting collision between the latter and the barge, *held* due to the suction of the overtaking vessel, for which she was in fault for crowding too close to the overtaken vessel and her tow.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 53.*

Collision, overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

In Admiralty. Suit for collision by the Pittsburg Steamship Company, owner of the steamship John Ericsson, against the steamer Henry W. Oliver, the Wilson Transit Company, claimant, with cross-libel by claimant against the Ericsson and the barge Manila. Decree for libelant.

Hoyt, Dustin & Kelley, of Cleveland, Ohio, for libelant.

Goulder, Holding & Masten, of Cleveland, Ohio, for respondents.

DAY, District Judge. This case arises out of a collision, or rather a series of collisions, which occurred shortly after midnight of August 20, 1907, in the Grosse Pointe Cut, near the lower end of Lake St. Clair. The vessels involved were the steamer John Ericsson, the tow barge Manila, belonging to the Pittsburg Steamship Company, and the steamer Henry W. Oliver, belonging to the Wilson Transit Company. The steamer Ericsson was a steam vessel of 390 feet keel, 48 feet beam, and had in tow on a line about 200 feet long the barge Manila, 136 feet long, about 50 feet beam. The steamer Oliver was 444 feet long, beam of 50 feet. The night was clear, although the captain of the Oliver says there was some smoke from a steamer, the Fitzgerald, passing down the river ahead of the Oliver. The collision occurred near the lower end of Grosse Pointe Cut. The Oliver was the overtaking boat.

Grosse Pointe Cut is a channel about 6 miles long, and 800 feet wide, dredged in the sandy bottom of Lake St. Clair to a depth of 20 to 21 feet. The waters of the lake, on either side of the cut, average from 15 to 22 feet deep. The upper end of the channel is marked on its easterly side by a lightship. The sides of the cut are marked at night by a series of white gas buoys on the west side, and red gas buoys on the east side. These gas buoys are about a mile and a half apart; there being four of them on each side of the six miles of this channel. The center line of the channel is indicated by range lights, known as the Isle aux Peches ranges. The rear light of these ranges is a mile and a half below the lower entrance to the cut, and the front light within the neighborhood of half a mile below its lower entrance.

The disaster occurred a little below the first pair of gas buoys, above the south entrance buoys, which would be about a mile and a quarter or a mile and a half from the south entrance of the cut. The time of the collision was a little after midnight.

The Ericsson and the Manila were proceeding down Grosse Pointe Cut at a speed of about seven miles an hour. After entering the cut, the Ericsson and the Manila fixed their course in the center, and maintained that position until the steamer Fitzgerald blew them a two-blast signal, asking permission to pass them on their port side. The signal was answered by two blasts from the Ericsson, who thereupon ported and hauled over to the westerly side of the channel. The Fitzgerald then passed to the port side. No vessels passed from this time until the Oliver appeared upon the scene. The Ericsson and Manila proceeded on their course in the westerly half of the channel. It is not plain whether the Oliver asked and obtained permission by exchange of signals to overtake and pass the Ericsson and tow. It is, however, of not very much importance. In any event, the Oliver was the overtaking vessel. There was no difficulty until the Oliver came abreast of these two boats. The course of the Oliver, the speed of the Oliver, and the distance at which she passed the Manila are important parts of the suit, as are the courses of the Ericsson and the Manila and their conduct during this time.

It appears from the testimony that the Oliver undertook to pass the Ericsson and the Manila, and as the Oliver came or was coming abreast of the Manila the Manila took a violent sheer off to starboard against her hard-astarboard helm; that, when the Oliver's stern reached a point abreast of the forward part of the Ericsson, the Ericsson took a sheer to port toward the Oliver, and collided with the Oliver. The result of the sheer of the Ericsson to port was to bring her port side forward near the head into collision with the Oliver's starboard side aft near the latter's boiler house. After the first contact the steamers swung apart and point. These contacts had a tendency to cause the Oliver's bow to swing to starboard, and to throw the Oliver and the Ericsson athwartships the channel and over toward the west side of the bank. After these occurrences, the Oliver lay in such a manner that her stern projected out into the channel eastward to and beyond the stern of the Ericsson. Meanwhile the Manila drifted down towards these two boats, and, after clearing the Ericsson's stern by a distance variously estimated at from 50 to 220 feet, came into collision with the Oliver near the corner of her cabin. When those in charge of the Manila noticed the predicament of the Oliver and the Ericsson, the helm of the Manila was promptly put hard astarboard in an effort to clear the sterns of the steamers, and her master running forward succeeded in letting go her anchor just as the Manila came in contact with the Oliver.

The testimony of the officers and men upon these two boats is diverse and somewhat confusing in an endeavor to get at the truth of these occurrences and ascertain the liability of these various boats. It is the claim of the Ericsson, briefly stated, that the Oliver was navigated in such a negligent manner as to create a suction which caused her to sheer into the Oliver, thereby furnishing the basis of these collisions. It is claimed on behalf of the Oliver that the Ericsson did not maintain her course and speed, but steered across the river into the Oliver in such a manner as to cause these collisions. The distance

at which these boats approached is of little importance. It is quite apparent that whatever the speed of the two boats, or the several boats was, the Oliver was going faster than either the Ericsson or the Manila. The distance between these boats at the time of passing has been variously estimated and testified to at from 500 feet on the one hand to 50 feet on the other, so that it would be a little difficult, if not impossible, to reconcile this testimony. It is quite probable that the vessels were closer than 500 feet, and in all probability they were close enough together so that the force of suction had an opportunity to operate. There is no motive or no good reason given why the course of the Ericsson should have been influenced in any other way than by this suction. If the boats were as far apart as has been testified to by the crew of the Oliver, there could not have been a collision. It is quite apparent that some force did operate to bring about this result. The record indicates that, when the Oliver passed the Manila, the force of suction operated on the Manila. From the account of the occurrences it is highly improbable that the action of the Manila on her tow line operating upon the Ericsson, considering the depth of the channel, could have caused the result which is argued by proctors for the Oliver. It must be remembered that the Manila sheered to starboard at the exact moment of the accident, when the after part of the Oliver was abreast of her bow. It would seem that this action was due to the suction of the Oliver in passing. If the Oliver's suction did not affect these vessels, then the maneuvers on behalf of these two vessels, if voluntary, must have been without any purpose whatever or must have been made in a manner which would indicate that the masters of these vessels were desirous of colliding with the Oliver, which position, of course, is not reasonable. The Syracuse, 9 Wall. 672, 676, 19 L. Ed. 783.

[1] It is apparent to me that the Ericsson was acted upon by the suction of the Oliver. It was a contingency which should have been calculated upon by the master of the Oliver. This suction, although it operates in many ways, is recognized by the courts, and is recognized by navigators in charge of ships. It has caused many collisions, and it has been said by Judge Lurton in the case of The Ohio, 91 Fed. 551, 33 C. C. A. 671: "Suction is a force to be reckoned with, and guarded against when vessels pass in too close proximity." The Atlantis, 119 Fed. 570, 56 C. C. A. 134; The Alexander Folsom, 52 Fed. 403, 3 C. C. A. 165; The City of Cleveland (D. C.) 56 Fed. 729; The Mesaba (D. C.) 111 Fed. 215; The Aureole, 113 Fed. 224, 51 C. C. A. 181. There is nothing to indicate that the Manila confronted in the darkness of the night by these two steamers was not properly navigated. The maneuvers of the Oliver in passing these boats and in backing after the collision caused the damages complained of.

From the cases cited, and from the arguments and record in this case, I think it is established that there is a tendency of the overtaken vessel to sheer away from the overtaking vessel when the afterpart of the latter vessel comes abreast of the forward part of the former. A large steamer of the type of the steamers involved in these occurrences displaces with her hull an enormous volume of water, and the

effect of these displacements augmented by the action under the way of the steamer tends to produce this suction, whereas, the steamer passing along, the water rushes in to fill the space thus vacated by the hull and thrown out by the propeller, and it is obvious that any object which is within reach is forcibly drawn toward the stern of the passing vessel. Thus, if the overtaken vessel's stern is within range of the influence, it is sucked in, and her bow is swung violently off in the opposite direction. If, on the other hand, the bow of the overtaken vessel comes within this influence, it is sucked in towards the stern of the overtaking vessel. That this force of suction is very powerful is undoubted. That it is particularly true in shallow water, I think, is also established. Now it was the duty of the Oliver, the overtaking vessel, to keep out of the way and to choose a place for passing which would not imperil the Ericsson and the Manila. Spencer on Collisions, § 71.

[2] Rule 22 (28 Stat. 645) provides:

"That notwithstanding anything contained in these rules, every vessel overtaking another vessel shall keep out of the way of the overtaken vessel."

It was the duty of the Ericsson and of the Manila to hold their course. This is provided by rule 20, and also recognized by the courts. The Ericsson and Manila did hold the course they were on except in so far as they were drawn from that course by the navigation of the Oliver and the incident suction. It was not the duty of the Ericsson and the Manila to keep away from the Oliver. The Atlantis, 119 Fed. 571, 56 C. C. A. 134. After the collision these boats were required to do all that prudent seamanship required to avoid a collision. I think this was done. The master was in extremis, placed there by the wrongful conduct of the Oliver in unduly crowding upon the course of this boat. Under such circumstances, a master may be excused if he does not maneuver with perfect skill, or even if he acts mistakenly under such pressure or omits to do all that ought to be done. The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. 468, 28 L. Ed. 812; The Maggie J. Smith, 123 U. S. 349, 8 Sup. Ct. 159, 31 L. Ed. 175.

The testimony of the captain of the Ericsson given in the record in this case and before the steamboat inspectors I think can be reconciled, and truly express the situation as it appeared to him. The Oliver as the overtaking vessel was required to keep out of the way of the overtaken vessel, and it was her duty to pass at a safe distance on a safe course. There having been a resulting collision, the Oliver has the burden of proof to show that it was occasioned by no fault on her part, but through some fault or neglect of duty on the part of the overtaken vessel; that is, the Ericsson. The Sif (D. C.) 181 Fed. 412; The Aureole, 113 Fed. 224, 51 C. C. A. 181; The Atlantis, 119 Fed. 568, 56 C. C. A. 134.

[3] I am of the opinion that the Oliver alone was at fault for these several collisions.