### THE POTOMAC.

### POTOMAC RIVER LINE, Inc., v. MONROE.
### No. 7201.

United States Court of Appeals for the District of Columbia.

Argued Feb. 9, 1939.

Decided April 17, 1939.

Rehearing Denied May 4, 1939.

Arthur J. Phelan, of Washington, D. C., and George Forbes and Henry L. Wortche, both of Baltimore, Maryland, for appellants.

Samuel F. Beach, of Washington, D. C., and Albert V. Bryan and Howard W. Smith, both of Alexandria, Va., for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

GRONER, C. J.

In the evening of July 12, 1936, at about 10:45 o'clock, the motor launch "Seabird", 39 feet 11 inches long, 11 feet 2 inches wide, in charge of her owner and with a party of his friends aboard, and with her regulation lights burning brightly, was proceeding up the Potomac River en route to Alexandria, Virginia.

The night was clear, and the tide was flood.

When about off Fort Washington some five or six miles below Alexandria, and when somewhat to the eastern or Maryland side of mid-channel, the navigator of the Seabird heard a two-blast whistle from an overtaking vessel, which turned out to be the side-wheeler "Potomac", 327

feet long and 60 feet wide. The Seabird answered with two blasts, indicating her willingness that the Potomac should pass on the Seabird's port side, and at the same time the navigator of the Seabird changed his course to starboard. Within a few seconds after the exchange of signals the two vessels collided. A metal brace supporting the Potomac's overhang some twenty or thirty feet abaft her stem on her starboard bow caught the top of the Seabird's canopy at a point near her port quarter, crushing it and carrying it away and with it the windshield and the mast, and knocking overboard one of the women guests.

At the time of the collision both steamer and launch were proceeding at full speed, the Potomac being the faster vessel by perhaps three or four miles an hour.

Libelant, a guest of the owner of the Seabird, was struck by the wreckage and seriously injured. The trial court found the Potomac solely at fault and awarded him damages in the sum of $3,750.

The single question on this appeal is whether the evidence required a finding that the Seabird, after agreeing to the starboard to port passing, turned suddenly to port and directly in the path of the Potomac, as is claimed by the respondent, so as to make a collision unavoidable. The trial court, after seeing and hearing the witnesses, found all the disputed facts in favor of libelant and, unless we are able to say as the result of our examination of the evidence that the findings are manifestly wrong, we ought not to disturb them. Norfolk Tidewater Terminals v. Wood Towing Corp., 4 Cir., 94 F.2d 164.

The evidence for both steamer and and launch definitely shows that the Potomac was the burdened vessel. As such she was in duty bound, in passing, to allow a sufficient distance between herself and the Seabird for a safe passage.[1] The width of the channel at the point of collision is between 600 and 700 feet. The direction, for two or more miles, is almost due north. Counsel agree that the Seabird was on the proper side of the channel and that there were no other vessels navigating in the vicinity. The Potomac had, therefore, from 250 to 300 feet of fairway in which to maneuver in passing. Even so, considering her greater size, she should have slackened her speed,[2] for it is well known that the suction of an overtaking vessel is a frequent cause of collision, and this risk is increased where the overtaking vessel is the larger. The Robert Fulton, 2 Cir., 10 F.2d 424; The North Star, D.C., 132 F. 145; The Henry W. Oliver, D.C., 202 F. 306; The Ohio, 6 Cir., 91 F. 547; The Atlantis, 6 Cir., 119 F. 568; The Monterey, D.C., 171 F. 442; The Sif, D.C., 181 F. 412; The Aureole, 3 Cir., 113 F. 224; The Mesaba, D.C., 111 F. 215. In any case she should have passed as far to the western side of the channel as was safe for a vessel of her draught.[3] The evidence for the libelant shows that not only did she not do this, but that her bow passed the Seabird's stern only a few feet away. If this is true, it was such gross negligence on the part of the Potomac as makes it unnecessary to inquire what action the Seabird took in that extremity.[4] However, all libelant's witnesses insist that the Seabird did nothing to increase the chances of collision, and the trial judge accepted their evidence as true, and we are not prepared to say that this was error. The witnesses for the Potomac, including her master, testified that the signal from the Potomac, advising the Seabird of her desire to pass to port, was sounded when the Potomac was 1,000 feet astern and 200 feet to port and when, if both vessels had maintained their courses, the passing would have been easy and safe. The danger, they insist, occurred when the Potomac, after receiving the passing assent of the Seabird, and when only 500 feet astern, saw the Seabird turning to port directly across the channel. This attempt to explain the collision is neither novel nor unusual,[5] but

---

[1] Article 24, Inland Rules, 33 U.S.C.A. § 209: Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.

[2] Article 23, Inland Rules, 33 U.S.C.A. § 208: Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse.

[3] The Bermuda, D.C., 17 F. 397; The Brandon, D.C., 237 F. 252; The Merrill C. Hart, 2 Cir., 188 F. 49; The Georgia, 2 Cir., 18 F.2d 743.

[4] The Carroll, 8 Wall. 302, 19 L.Ed. 392.

[5] "It is always improbable, and generally false". Haney et al. v. Baltimore Steam Packet Company, 23 How. 287, 291, 16 L.Ed. 562.

in this case respondent seeks to justify it by pointing to the testimony of some of the defense witnesses that the navigator of the Seabird, when he was seen at the hospital in Washington two hours after the collision, appeared to have been drinking. This testimony the trial judge rejected, and we think correctly, because all the evidence in connection with his acts and conduct before and after the collision indicates the contrary. It is hard to believe he would have done so senseless a thing as to change the course of his vessel approximately ninety degrees and run her across the channel and directly into the other vessel, or that if this had occurred the Potomac would not at once have blown danger signals—which in that case she should have done and which she did not do.

This view is strengthened by the evidence in relation to the damage sustained by the Seabird or, perhaps stated more accurately, the lack of damage to that part of the launch which it is claimed first came into contact with the steamer. The respondent's evidence in this respect is that, when the Seabird turned to port and up to the time of impact, she was running around nine or ten miles an hour and that at this speed her stem struck the starboard bow of the Potomac; and yet, when shortly after the collision the Seabird was surveyed, there was no indication of injury to her stem, nor were there any markings or scrapings which would indicate that any part of her hull forward of amidships had come into contact with the Potomac. And, in addition to that, there was no mark or indication of injury to the Potomac where the Seabird is said to have hit. It is going too far to ask us to believe the collision could have occurred without some indication of injury to one or the other or both of the vessels at the points of impact. The damage which did occur to the port quarter of the superstructure of the Seabird is, on the other hand, entirely consistent with the evidence of libelant's witnesses, for if the Potomac attempted to pass the launch only a few feet away, the suction of her displacement wave would explain the collision exactly as they say it happened. The Robert Fulton, supra.

On the whole case, we think that there is substantial evidence to sustain the District Court's findings of fact and conclusions of law, and the challenge to the amount of the award being unsupported by substantial evidence, the decree of the District Court should be, and is, affirmed.

Affirmed.