### THE FREDERICK H.
### THE CATAWISSA.
### THE MT. AIRY.
#### No. 13447.

District Court, E. D. New York.
June 1, 1933.

594

Crowell & Rouse and E. Curtis Rouse, all of New York City, for libelant.

Park, Lynch & Hagen and C. W. Hagen, all of New York City, for claimant.

CAMPBELL, District Judge.

This suit is brought by the libelant, the owner of the schooner Frederick H, against the steam tug Catawissa and the barge Mt. Airy, for damages alleged to have been caused by collision.

I find the facts as follows:

At all the times hereinafter mentioned, the libelant was the owner of the three-masted schooner Frederick H, which was a vessel of 466 tons' gross and 396 tons' net register, or thereabout, with its home port at Parrsboro, Nova Scotia.

At all the times hereinafter mentioned, the tug Catawissa was an American vessel engaged in the coastwise towing service, with registered dimensions of 558 tons' gross, 352 tons' net, length 158 feet, beam 29 feet, depth 18 feet, with Philadelphia as its home port.

At all the times hereinafter mentioned, the barge Mt. Airy was an American vessel, engaged in coastwise commercial service.

The steam tug Catawissa and barge Mt. Airy were, during the pendency of process hereunder, within the port of New York and within the jurisdiction of this court.

On January 8, 1932, at about 10:30 o'clock a. m., the schooner Frederick H, loaded with a cargo of piling, left Gloucester, Mass., bound for New York.

In the afternoon of that day, the wind became very light and variable, and by midnight died out altogether. During the night and until after the happening of the collision hereinafter mentioned, the wind continued out of the north, a little to the west, to be too light to continually maintain steerageway on the schooner, and there were flurries of snow.

The weather being unfavorable, and as it looked like heavy winds and storm at 4 o'clock p. m. on January 8, 1932, the Frederick H, then being about 14 miles from Gloucester, started back to make Gloucester harbor again.

About 5:30 o'clock a. m. on January 9, 1932, the tug Catawissa, with the barges Hutchinson, Mt. Airy, Pickering, and Ontelaunee in tow in the order named, left the Gloucester Anchorage bound for New York. After getting under way, the hawsers were let go so that the first barge was on two hawsers of about 200 fathoms each from the tug, and the succeeding barges were on hawsers of about 200 fathoms each from the barge ahead, and the tug proceeded at full speed. At the time the tug got under way at Gloucester, the wind was light from the northwest and the weather clear. At approximately 6 o'clock a. m. on January 9, 1932, just as the day was breaking and the schooner Frederick H was little more than drifting, with her regulation lights burning and with an efficient lookout forward, the lookout reported and those on board observed off to port the green light and masthead lights of an approaching vessel, which later proved to be the tug Catawissa

with four barges in tow. The lights appeared to be over a mile away.

The tug and tow appeared to be coming directly toward the schooner and continued to approach, without apparent change of course until a collision seemed imminent, when the tug sounded for the barges in its tow the warning signal, followed by a two-blast signal to starboard helm, indicating a change of course to port, and the tug and barges directed their course to port; the tug crossing the schooner's bow very close to her and continued on its way, drawing its tow across the bow of the schooner. As the Catawissa was crossing the bow of the Frederick H, the mate of the Frederick H ordered the man at the wheel to roll his wheel down hard and ordered the outer jib to be let go.

The first barge, the Hutchinson, which was loaded, passed clear, but the second barge, the Mt. Airy, which was light, at about 6:15 o'clock a. m., came into collision with the bow of the schooner Frederick H, carrying away and damaging its bow sprit, jibboom, and head gear, and slightly damaging the Mt. Airy.

The tug Catawissa was showing the regulation lights, as were the barges in her tow. The chief mate of the Catawissa was at the wheel until he sounded the warning signal and the two-blast signal, after which the master took charge. A man was stationed forward on the Catawissa as a lookout, but did not report the Frederick H, which was first observed by the mate and was not observed by the lookout until the mate had given the said whistle signals.

The Catawissa did not maintain an efficient lookout.

The Frederick H and the Catawissa were on crossing courses, and the Catawissa had the Frederick H on the tug's starboard hand.

The Frederick H was not an overtaking vessel.

The Frederick H was not being overtaken by the Catawissa.

The Frederick H was a sailing vessel on the wind on the port tack close-hauled, without even auxiliary power, and the Catawissa was a steam tug.

The Hutchinson, being loaded, could not go to port as quickly as the Mt. Airy, which was light, and, to prevent the Mt. Airy from getting around the Hutchinson, the Mt. Airy after going to port was obliged to ease up to starboard, and thus was brought closer to the Frederick H before the collision.

After the collision was called to the at-

tention of the Catawissa, she immediately stopped her headway, and, after hauling in her hawser, proceeded back to the Mt. Airy to find out if she was damaged, and then returned the barges in her tow to Gloucester Harbor. After returning her tow to Gloucester Harbor, the Catawissa went out to find and assist the Frederick H, and towed her to an anchorage in Gloucester Harbor alongside the Hutchinson.

The tug Catawissa crossed the bow of the Frederick H, and the testimony of those on the Catawissa was that the vessel which afterwards proved to be the Frederick H was first observed by those on the Catawissa at 6:15 o'clock a. m. abaft the beam. The lookout maintained on the Catawissa was an inefficient one and the cause of the collision.

Each of the barges in tow of the Catawissa was steered by those on board, but the Mt. Airy controlled in large part by the action of the Catawissa and by the loaded scow Hutchinson next ahead, and without getting around the Hutchinson, due to turning faster, could not have avoided contacting with the Frederick H, and, even if it could, then such navigation would have been improper.

There is a sharp conflict as to visibility at the time of the collision and whether it was snowing, but it seems to me that the failure of those on the Catawissa to observe the Frederick H was not due to poor visibility, but to the failure of the Catawissa to maintain an efficient lookout. The snow, if any there was at the time of the accident, cannot have interfered with the navigation of the Catawissa, as she was able to see the boats of her tow and had been going at full speed.

■ On the facts as found, the Catawissa is solely at fault.

The tug was proceeding at full speed, and the mate of the tug could see the lights of his tow, but neither the man posted as lookout nor the mate saw the Frederick H until after the Catawissa had crossed the bows of the Frederick H. This is sufficient to establish the incompetency of the lookout and gross negligence. The Gate City (D. C.) 90 F. 314.

While in no sense excusing the tug, the fact that both the mate and the lookout had been on duty for six and one-quarter hours, in cold, raw weather, and were about to go to breakfast at the time of the collision, may furnish an explanation of their failure to observe the Frederick H.

■ The tow was 5,500 feet long, and was unmanageable under the conditions that were

present, and the tug is liable for damages resulting from its failure or inability to control the tow.

The tug and the schooner were on crossing courses, and the tug Catawissa had the schooner Frederick H on the tug's starboard bow.

The tug and the tow must be treated as one, and was the burdened vessel.

Under the International Rules, it was the duty of the burdened vessel to avoid crossing ahead of the Frederick H (article 22 [33 USCA § 107]) and to keep out of the way of the Frederick H (article 20 [33 USCA § 105]). The burdened vessel was also required by the preliminary article to rule 4 (33 USCA § 101) to observe the bearing of an approaching vessel. All of these were violated by the burdened vessel.

It seems clear to me that the tug was not overtaking the Frederick H, but that they were on crossing courses. Had the tug been overtaking the schooner, the schooner, with hardly sufficient wind to give her steerageway, would have had to make a pronounced and impossible change in her course to contact as she did with the Mt. Airy.

The lights of the tug and tow were visible to those on the schooner, and they had the right to believe that the schooner's lights, which were set and burning as required by the regulations, were visible to those on the tug. The lights were not obscured by the snow, and The Columbian (D. C.) 91 F. 801, cited by claimant, is not in point.

The International Rules article 10 (33 USCA § 80), cited by the claimant, is not in point, and, as the schooner was not being overtaken by the tug, the schooner was not required to show from her stern a white light or a flare-up light.

The tug and the first barge cleared the schooner, and those on board the schooner, hearing the signals and observing the change of course of the tug and tow, had every reason to expect the tow would go clear, and the showing of a flare-up light would not have helped the situation nor prevented the collision, and the Frederick H was not at fault for failing to show a flare-up light. The Lafayette (C. C. A.) 269 F. 917, 922; The Gate City, supra; The Martha E. Wallace (D. C.) 148 F. 94.

Article 12 of the International Rules (33 USCA § 82) is not mandatory but permissive, and the schooner was not at fault for failing to show such a light.

The contention of the claimant that the schooner should have shown a flare-up light before the tug crossed the schooner's bow is not sustained. Those on the schooner say they could see for over a mile and saw the lights of the tug and the barges, and, while they may have thought the tug was not keeping a good lookout, it does not seem to me that they were required to show a flare-up light in view of the fact that visibility must have been much better to those on the tug than they said on the trial, as it was clear enough for the tug to go at full speed, and the mate of the tug said he was able to see the lights of his barges. The schooner's lights with the dark background should have been visible to those on the tug, and there is no merit to the argument on behalf of the tug that those on the tug could not see the schooner's hull. The Jean Jadot (D. C.) 2 F. Supp. 942, 1933 A. M. C. 247.

The Frederick H had the right to assume that the tug would see her statutory lights, and was not at fault for failing to show a flare-up light.

The situation of the Frederick H as the privileged vessel was a hard one, as she was bound to keep her course and speed until it became apparent that the burdened vessel could not alone avoid the collision. The Boston Socony (C. C. A.) 63 F.(2d) 246.

I can find no fault with the schooner for dropping her outer jib and coming up into the wind, as this seems to me to have been the proper maneuver under the conditions, as the effect of dropping that jib and putting the wheel hard over when the schooner had bare steerageway was to check the schooner's headway in the quickest way possible. To have gone off before the wind, as argued by claimant, would have taken a longer time and would not have checked the schooner's headway.

Claimant's argument is based on its contention that the tug and schooner were on parallel or converging courses, while I have found they were on crossing courses.

It seems to me that under the circumstances the schooner as the privileged vessel, with an efficient lookout, performed her obligation of keeping her course and speed until it became evident to her that she must do something, and then she did what she was obligated to do and checked her headway. This was not an error, and, even if it was an error, it was not one for which she should be condemned, but simply an error in extremis.

No such fault has been shown as would warrant charging the schooner even in part

with contributing fault necessarily bringing about the result. The Lafayette, supra.

The faults of the tug Catawissa, the burdened vessel, are so glaring and grave, and so clearly adequate in and of themselves, to account for the collision, that this court should not be assiduous to find fault on the part of the schooner. The Socony No. 19 (C. C. A.) 29 F.(2d) 20; The Lafayette, supra; The Chicago (C. C. A.) 125 F. 712, 716; The Transfer No. 8 (C. C. A.) 96 F. 253.

The schooner Frederick H is without fault.

I cannot agree with the contention of the libelant of fault on the part of the barge Mt. Airy, as that barge was without motive power, and to a large degree her motions were controlled by the Catawissa, although by her steering wheel the barge retained some control.

The Catawissa did signal for the barges to go to port, and the Mt. Airy complied with that signal. The first barge, the Hutchinson, being loaded, could not respond to that signal as quickly as the Mt. Airy, and the Mt. Airy, in order to avoid getting around the Hutchinson, which would have created a bad situation, eased up a little to the starboard. If this, as I think it did, contributed to the collision, it was not a fault on the part of the Mt. Airy, but of the Catawissa, which by her faulty navigation had brought the Mt. Airy into the position where, in the exercise of judgment as a seaman, the man at her wheel was compelled to make a decision which was in extremis. The Mt. Airy is without blame, and the steam tug Catawissa is wholly and solely to blame.

I find as conclusions of law:

That the steam tug Catawissa, on the day and at the place in question, was the burdened vessel, and negligently and carelessly failed to maintain an efficient lookout, and was so negligently and carelessly navigated by those for whose actions she was responsible that she brought the Mt. Airy, a barge which she had in tow, into collision with the schooner Frederick H, which was on crossing courses with the steam tug Catawissa and her tow and on said steam tug's starboard hand, and thereby caused damage to the schooner Frederick H, the privileged vessel, for which the said steam tug Catawissa is wholly and solely at fault.

That neither the libelant nor the schooner Frederick H, the privileged vessel, or any one for whose actions they or either of them are responsible, negligently caused or contributed to the said collision or the damages to the said schooner Frederick H, and that they are without fault.

That the barge Mt. Airy was without fault.

That the libelant is entitled to a decree against the steam tug Catawissa, with costs and the usual order of reference, and the barge Mt. Airy to a dismissal of the libel without costs.

That a decree may be entered accordingly.

Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Admiralty Rules (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.