Harry B. LUKE, June Luke and Tina Luke, Libelants,

v.

Howard S. HIRSCH and the MYAB III, her tackle, engine, apparel and furniture, Respondents.

No. 63 AD 1016.

United States District Court
S. D. New York.

Jan. 23, 1968.

Thomas M. Breen, New York City, for libelants.

Charles R. Eichel, New York City, for respondents.

## MEMORANDUM

COOPER, District Judge.

This is a suit arising out of a collision between the ketch Vagabond, owned and operated by libelant Harry B. Luke, and the Myab III, a power boat owned and operated by respondent Howard S. Hirsch. The collision occurred in a channel located south of West Fire Island, New York, on June 23, 1963, during the late afternoon.

Libelant contends that the collision caused by Hirsch's negligence resulted in damage to the Vagabond. In addition, co-libelants June Luke and Tina Luke (now Tina Apgar) claim damages for personal injuries attributable to the impact.

One matter not in substantial dispute is that immediately prior to the collision the Myab III had been proceeding on a steady course in a southwesterly direction down the left side of the channel and alongside a shoal between buoys marked R"8" and N"6" (Exhibit 2): that the Myab III was approximately fifty feet north of the shoal during this period of time until the impact in the vicinity of buoy N"6".

As to the activity of the Vagabond prior to collision, there is conflicting testimony. The party of seven aboard the sailing vessel was returning to Bay Shore, Long Island, after an outing at Clam Pond on Fire Island, when the collision occurred. Luke testified that it was sunny, a bit hazy, visibility five miles, the wind from the southwest at ten to twelve knots. According to Luke, in order for the Vagabond to reach the West Channel leading to Bay Shore, it was necessary to execute tacks back and forth across the channel. When he reached a point on the north side of the channel off the south border of West Fire Island, he came about on a starboard tack and headed for the south side of the channel at a speed of about four knots.

About three minutes after Luke commenced the star-board tack, and at a time when he was discussing with his crew the necessity for another tack as the Vagabond was approaching the shallow water off Fire Island, he spotted the Myab III about 500 feet off his port quarter heading down the left side of the channel at a speed in excess of his own. He testified that the Vagabond was as close in to the wind as possible and was on a course of 35 or 40 degrees south of the southwest wind direction. He testified that when the Vagabond reached the south side of the channel, she was struck on her port bow by the Myab III at a site to the northeast of buoy N"6", and approximately 100 feet away from the shoal bordering the south side of the channel; that the collision occurred about a minute or two after he first spotted the Myab III.

The major discrepancy between the testimony of Luke and Hirsch is the latter's insistence that, prior to the collision, the Vagabond was proceeding down the channel on a course nearly parallel to that of the Myab III and sailing approximately fifty feet to the right of the Myab III. Then, respondent testified, as he was approaching and overtaking the Vagabond, the ketch made a sudden maneuver into his path. The Myab III, testified Hirsch, crashed into the Vagabond west of buoy N"6".

■ We found credible the testimony of Luke and his witnesses. Hirsch's version was unconvincing; we reject the testimony of his witness Bettan. Qualitatively and quantitatively libelant sustained his burden of proof.

We conclude that the course of the Vagabond was substantially that testified to by libelants' witnesses, and that the site of the collision was to the northeast of buoy N"6" approximately 100 feet from the shoal at the southern edge of the channel. In support of this conclusion, we place great weight upon the testimony of Luke, and we accept his and his son's detailed accounts of the times and distances involved.

In accord with our resolution of these factual issues, we hold that Hirsch was guilty of statutory fault in the handling of the Myab III and that his negligence alone proximately caused the collision with the Vagabond.

Applying the statutory rules of the road for inland waters,[1] we find that the Vagabond, as the privileged vessel, held its course and speed as the rules require; that the Myab III, the burdened vessel, was derelict in its responsibilities in that it did not keep out of the Vagabond's way.

■ Respondent argues that the Vagabond, upon sighting the Myab III, should have immediately executed a tack in order to avoid the power boat; that by maintaining her course when it would have been prudent and safe to turn away, the Vagabond was at fault for the ensuing collision. This contention lacks merit and flies in the face of the express statutory rules of the road. It was the power boat which owed the sailing vessel the duty of changing her course to avoid collision. If the Vagabond had done so, a situation of greater danger might have arisen, for Luke had every right to believe, up to the moment of impact, that the power boat would change course. See The Lafayette, 269 F. 917 (2d Cir. 1920). The circumstances clearly called for maintenance of course by the ketch. This she did. Our circuit has held:

> The privileged vessel is always in a difficult situation. The rule is that she must keep her course and speed until it becomes apparent that the burdened vessel cannot alone avoid the collision. The Boston Socony, 63 F.2d 246, 248 (2d Cir. 1933).[2]

1. The applicable rules at the time of the collision read as follows:
   *Steam and sailing vessels meeting (Art. 20)*
   When a steam vessel and a sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel. 33 U.S.C. § 205.
   *Vessel having right-of-way to keep course (Art. 21)*
   Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed. 33 U.S.C. § 206.
   *Crossing ahead of vessel having right-of-way (Art. 22)*
   Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other. 33 U.S.C. § 207.
   *Duty of steam vessel to slacken speed (Art. 23)*
   Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse. 33 U.S.C. § 208.
   The word "steam vessel" shall include any vessel propelled by machinery. 33 U.S.C. § 155.

2. Though our finding that the Myab III's failure to give way to a sailing vessel, in violation of Art. 20 (33 U.S.C. § 205), supra note 1, is sufficient to account for her liability to the Vagabond, the parties (by way of oral testimony, exhibits, and post-trial memoranda) appear to agree that the Myab III was also overtaking the Vagabond prior to impact.
   Art. 24 of the inland rules reads in part:
   Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.
   Every vessel coming up with another vessel from any direction more than two points abaft her beam * * * shall be deemed to be an overtaking vessel * * * 33 U.S.C. § 209.
   See also Hutton Co. v. Arrow Builders Supply Corp., 371 F.2d 944, 947, 948 (2d Cir. 1967).
   Since Art. 24 gives rise to the same rights and duties as the articles previously cited, supra note 1, there is no need for further discussion of the Myab III's liability as an overtaking vessel.

This ruling, as we shall presently indicate, was fully observed by the ketch.

The Myab III made no effort to avoid collision and maintained its course down the channel. When Luke realized that collision was imminent, he turned the Vagabond into the wind in order to slow her down. As he was so maneuvering, the collision occurred. Since the obligation to hold her course had ceased, the Vagabond did not violate her duty by coming into the wind. When it became apparent that the Myab III did not intend to conform to her legal obligation, the vessels were in extremis, and no liability attached to the privileged vessel by virtue of her futile movements in the anxious moments before collision. *The Lafayette*, supra; The Frederick H (Cochrane v. Catawissa), 4 F.Supp. 593 (E.D.N.Y.1933); McCormick v. The Gladys, 35 F. 160 (E.D.N.Y.1888).

The fact that Luke's maneuver into the wind, to avoid collision, had as its secondary purpose avoidance of the shoal is irrelevant on the issue of liability. As soon as the Myab III entered the picture and presented a risk of collision, Luke had the duty of holding his course and speed as long as he possibly could. It was the duty of the Myab III to appraise the situation and use any means at her disposal to stay clear of the Vagabond. Her proximity to the shoal does not alter the fact that it was the duty of the power boat to avoid a collision—if not by turning to the left, then by any other means she was in a position to employ.[3] Just as Luke had every right, up to the last moments before collision, to assume that Hirsch would keep out of his way, so Hirsch should have acted on the assumption that Luke would maintain his course until he could no longer do so in view of the shoal. Respondent has failed to meet his burden of proving that the Myab III was unable to conform to her statutory duty to keep clear of the Vagabond. See Zim Israel Navigation Co. v. S.S. American Press, 222 F.Supp. 947 (S.D.N.Y.1963), aff'd, 336 F.2d 150 (2d Cir. 1964), cert. denied, 380 U.S. 954, 85 S.Ct. 1089, 13 L.Ed.2d 971 (1965).[4]

There is no merit in respondent's other allegations of negligence on the part of the Vagabond. We can find no "special circumstances" which would have justified Luke's departure from the rules of the road by turning off course sooner than he did.[5] Also, the fact that John Lewis was at the tiller of the Vagabond until a minute or less prior to impact in no way compels the conclusion of negligence which respondent draws. As long as Luke and John Lewis observed the Myab III and maintained the Vagabond's course and speed until the power boat could no longer alone avoid collision, it is immaterial that Luke re-

---

3. See Articles 20 and 21, supra note 1.

4. As to libelants' contention that the Myab III also violated Art. 25 of the inland rules ("In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel." 33 U.S.C. § 210. Text prior to 1966 amendment.), we find it unnecessary to decide the threshold mixed question of law and fact as to whether the channel in question is a narrow channel within the purview of Art. 25. Skibs A/S Siljestad v. S/S Mathew Luckenbach, 215 F.Supp. 667, 681 (S.D.N.Y.), aff'd, 324 F.2d 563 (2d Cir. 1963). Even if it is not a narrow channel, respondent's violation of his duty as operator of a burdened vessel is such as to call for liability.

As to respondent's argument that a sailing vessel must not suddenly tack in front of a power boat in a narrow channel, we hold that even if the channel in question were so considered, Luke's maneuver into the wind before collision cannot render him liable, for the Myab III's dereliction of duty as a burdened vessel left Luke no alternative. See *The Lafayette*, supra.

5. *Special circumstances requiring departure from rules (Art. 27)*
In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger. 33 U.S.C. § 212.

linquished the tiller for a few minutes after commencement of the starboard tack. The respondent has failed to make out the strong case which is required in order to hold a sailing vessel liable when it collides with a steam or motor vessel. *The Lafayette,* supra.

As to liability only, the foregoing shall constitute this Court's Findings of Fact and Conclusions of Law as required by Rule 52, F.R.Civ.P.

The time and place for the presentation of evidence with respect to damages will be discussed with counsel at an early date.