**UNION OIL COMPANY OF CALIFORNIA, Plaintiff-Appellee,**

v.

**The TUG MARY MALLOY, her Engines, Tackle, Etc., et al., Defendants-Appellants.**

**No. 27408**
**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.
July 18, 1969.

George W. Brown, Jr., Beaumont, Tex., for appellants.

Robert M. Julian, Houston, Tex., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This suit in admiralty was brought by the Union Oil Company of California as owner of the tanker PURE OIL against the tug MARY MALLOY for damages sustained by the tanker in a collision on the inland waterways near Port Arthur, Texas. The trial court found that the accident was the sole responsibility of the MARY MALLOY and awarded damages to the plaintiff in the amount of $22,508.47. On this appeal, Levingston Shipbuilding Company, as owner of the MARY MALLOY, attacks the findings of the trial court as clearly erroneous and advances its own theory as to the cause of this unfortunate nautical contretemps. While appellant's theory is not without support in the record, we decline the proffered invitation to substitute our judgment on factual matters for that of the learned trial judge.

■■ We note at the outset that the clearly erroneous rule in civil actions, F.R.Civ.P. 52(a), is applicable to suits in admiralty. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Hart v. Blakemore, 5 Cir.1969, 410 F.2d 218; Lloyd v. Gill, 5 Cir.1969, 406 F.2d 585; Haynes v. Rederi A/S Aladdin, 5 Cir.1966, 362 F.2d 345, 349. Under this rule, "the Court of Appeals may not set aside the judgment below unless it is clearly erroneous." McAllister v. United States, 348 U.S. at 20,

75 S.Ct. at 8. "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' * * *" *Id.* We have carefully examined the record in this case and find no error of such magnitude. We therefore affirm.[1]

The accident in question occurred at 3:03 a. m. on January 24, 1966, in the Sabine-Neches Canal just below the intersection of the Neches River and the Intracoastal Waterway. The Intracoastal Waterway parallels the northern shore of Sabine Lake, passing between Stewt's Island and Humble Island, and then takes a southerly turn and intersects with the Neches River. The Neches River flows in an easterly direction up to Rainbow Bridge, then makes a large bend to the southward where it joins with the Intracoastal Waterway. The three bodies of water thus meet in a "Y" formation with the Sabine-Neches Canal at the southernmost portion of this juncture.

On the morning of the accident the PURE OIL was proceeding down the Neches River in an easterly direction toward the Canal with a full cargo of refined petroleum products. At the same time, the MARY MALLOY was traveling in the Intracoastal Waterway in a westerly direction pushing before it three loaded barges. As the two vessels approached the intersection with the Canal, each sighted the other across Humble Island. Despite the darkness, visibility was good and both vessels then estimated their distance from the Canal at approximately one mile.

As the PURE OIL rounded the bend in the Neches River preparatory to entering the Canal, the pilot sounded a one blast signal to alert the MARY MALLOY that she was approaching the intersection. No return signal was blown by the MARY MALLOY. Thereafter the two vessels entered the intersection at approximately the same time, and proceeded into the Canal, the PURE OIL on the starboard side of the channel and the MARY MALLOY near the center of the channel on the port side. As the two vessels entered the Canal, they assumed a course parallel to one another at a distance of only one hundred feet. They retained this status for nearly two minutes, during which time the PURE OIL continually gained headway on the MARY MALLOY and her barges. At the end of the two-minute period the lead barge of the MARY MALLOY suddenly veered to starboard and collided with the port quarter of the PURE OIL causing her damage. Evasive action taken by the PURE OIL seconds before the collision was to no avail.

At trial evidence was introduced concerning the customs which controlled the order of entry into the intersection from the Neches River and the Intracoastal Waterway. The evidence established that it was customary for vessels proceeding down the Intracoastal Waterway to hold up behind Stewt's Island and to give the right-of-way to vessels in the Neches River.[2] Under the circumstances of the present case the trial court found that the MARY MALLOY should have held up behind Stewt's Island until the PURE OIL had cleared the intersection. The court concluded that "The failure of the MARY MALLOY to do so was negligence and such negligence was the proximate cause of the collision and damage to the PURE OIL." It further found that "once the

---

1. Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

2. See The Giove, 5 Cir. 1928, 27 F.2d 331, 332; The Transfer No. 21, 2 Cir. 1917, 248 F. 459, 461, on the propriety of basing a finding of negligence on the violation of a well established local custom. The evidence in the present case shows that the custom on right-of-way into the Canal was well established and known to the seamen aboard both vessels.

tow of the MARY MALLOY entered the intersection the vessels were *in extremis*" and that thereafter "no act or omission on the part of the PURE OIL or its crew contributed to or caused the collision or constituted fault or negligence." On the basis of these conclusions the trial court entered judgment for the plaintiff.

■ The primary issue on this appeal is whether the evidence in the record is sufficient to sustain the trial court's finding that the MARY MALOY's failure to yield the right-of-way to the PURE OIL was the proximate cause of the collision.[3] Appellant, Levingston Shipbuilding Company, contends that even if the failure to hold up behind Stewt's Island was negligence, such failure did not contribute to the accident. According to Levingston, the collision was caused by suction created when the PURE OIL overtook and passed the MARY MALLOY at the unsafe distance of one hundred feet. Since it is well established that the duty to avoid the effects of suction between two passing vessels is placed upon the overtaking vessel, Potomac River Line, Inc. v. Monroe, 1939, 70 App.D.C. 215, 105 F.2d 94; Northern Nav. Co. v. Minnesota Atlantic Transit Co., 8 Cir.1931, 49 F.2d 203; The Fontana, 6 Cir.1903, 119 F. 853; The Atlantis, 6 Cir.1903, 119 F. 568; The Aureole, 3 Cir.1902, 113 F. 224; Sun Oil Co. v. M/V Wartenfels, E.D. Pa.1966, 250 F.Supp. 244, Griffin, Collision § 257 (1949), appellant contends that the sole responsibility for the accident rests with the PURE OIL. Cf. Ellis Towing & Transportation Co. v. Socony Mobil Oil Co., Inc., 5 Cir.1961, 292 F.2d 91.

■ The facts of the collision as found by the trial court and as indicated by our examination of the record do not substantiate appellant's theory. To begin with, the PURE OIL does not seem to have been an "overtaking vessel" as that term is defined by the Inland Rules, 33 U.S.C.A. § 209.[4] The Captain of the PURE OIL testified at trial that he had no difficulty in observing the side lights of the tug and her barges as the ships entered the Canal. Since the invisibility of side lights is made the statutory test of an overtaking vessel, when such lights would otherwise be visible except for the relative positions of the vessels, the Captain's testimony clearly negatives the inference that the PURE OIL was overtaking the MARY MALLOY. See Petition of Val Marine Corporation, S.D.N.Y. 1956, 145 F.Supp. 551, 553, modified on other grounds, Val Marine Corp. v. Costas, 2 Cir., 256 F.2d 911.

Appellant's allegation of an overtaking situation is also refuted by testimony from a member of the PURE OIL's crew. This witness testified that the PURE OIL entered the Canal intersection at the same time, or even slightly ahead of the MARY MALLOY. While such testimony and like statements from the Captain of the PURE OIL are challenged by observers aboard the tug, it is not our function to reassess the credibility of witnesses. It is clear from the record before us that the trial court had ample grounds for concluding that the vessels entered the intersection at approximately the same time and that no overtaking situation ever existed.

■ A further weakness in appellant's suction theory is evidenced by the circumstances surrounding the accident

---

3. Appellant only halfheartedly challenges the finding of negligence itself. Its sole objection to such finding appears to be based on the conviction that the two vessels did not enter the intersection at the same time and that therefore the MARY MALLOY was under no duty to yield the right-of-way to the PURE OIL. In light of the circumstances of the accident, discussed more fully, *infra*, we find no merit in this contention.

4. " * * * Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such a position with reference to the vessel which she is overtaking that at night she would be unable to see either of that vessel's side lights, shall be deemed to be an overtaking vessel * * *."

itself. We note principally the existence of a strong flood tide which the trial court found had the tendency to push the MARY MALLOY across the channel towards the PURE OIL. While suction from the PURE OIL undoubtedly aided these tidal forces in the seconds just prior to the collision,[5] this fact affords no sound basis for describing suction as an independent and proximate cause of the accident. The mere fact that suction may have contributed to the accident and made its influence felt subsequent to the MARY MALLOY's negligent act does not dissipate the effects of the initial error. "* * * causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, although they may be nearer in time to the result * * *." Tidewater Associated Oil Co. v. United States, S.D.Calif.1945, 60 F.Supp. 376, 385.

The real question is whether the MARY MALLOY's failure to yield the right-of-way can properly be described as that cause which "necessarily sets the other cause or causes in operation" in "a natural and continuous sequence," Tidewater Associated Oil Co. v. United States, *supra*, at 385, or whether the accident might otherwise have been avoided except for the intervention of a force "started and working actively from a new and independent source." *Id.* We think that the facts more nearly conform to the first proposition.

The initial act of negligence on the part of the MARY MALLOY was directly responsible for bringing the vessels within one hundred feet of each other. Under the prevailing conditions of the tide, such proximity was bound to be highly dangerous, and the events which followed can reasonably be called the natural consequences of the precarious position in which the vessels had been placed. While it is true as appellant argues that the collision did not occur at the intersection itself, but at some short distance thereafter, this short reprieve did not amount to a break in the chain of causation. As the trial court found, the vessels were *in extremis* from the moment they entered the intersection. Under such circumstances the short lived good fortune which both vessels enjoyed in escaping the immediate consequences of the MARY MALLOY's folly cannot now be urged as the basis of her exculpation.

■ Appellant also argues that the trial court erroneously determined that "no act or omission on the part of the PURE OIL or its crew contributed to or caused the collision or constituted fault or negligence." Appellant contends that once the vessels lined up on a parallel course the PURE OIL should have immediately slackened speed in order to avoid the effects of suction that were then to be anticipated. The PURE OIL's failure to take prompt action to minimize the danger is said to be negligence under the circumstances.

■ The answer to appellant's objection is to be found largely in the reasons for the PURE OIL's speed as she entered the Canal. According to her Captain, the PURE OIL had to put on an extra burst of speed in order to negotiate a bend in the Neches River and still come out of the turn on the starboard side of the Canal. Under normal conditions the bend in the River could be navigated at normal speeds and the tanker would then enter the Canal more nearly toward its center. In the present instance, however, the presence of the MARY MALLOY at the center of the narrow channel required the PURE OIL to hug the starboard bank in order to avoid a direct collision. Since extra speed is necessary for the added maneuverability which the circumstances required, the PURE OIL entered the

---

5. The trial court found that "the PURE OIL naturally created a certain amount of suction off her stern quarter on the port side, which had the effect of aiding the tidal forces in inclining the barges toward her."

Canal at "full bell." Considering the MARY MALLOY's responsibility for this speed, the short space of time in which the PURE OIL had to act, and the lack of any evidence that slackening speed would have avoided the accident, we cannot say that the trial court was clearly erroneous in finding no negligence in the PURE OIL's conduct.[6] Furthermore, if negligence there was, it was certainly negligence committed *in extremis*, and, under the circumstances, excusable. Griffin, Collision § 233 (1949).

It has long been the law that errors in judgment committed by a vessel put in sudden peril through no fault of her own are to be leniently judged. The Carroll, 1869, 75 U.S. (8 Wall.) 302, 19 L.Ed. 392; The Nichols, 1869, 74 U.S. (7 Wall.) 656, 19 L.Ed. 157; The Grace Girdler, 1869, 74 U.S. (7 Wall.) 196, 19 L.Ed. 113; The Genesee Chief, 1852, 53 U.S. (12 How.) 443, 461, 13 L.Ed. 1058. It is still the law today. Atkins v. Lorentzen, 5 Cir.1964, 328 F.2d 66, 72; White Stack Towing Corp. v. Bethlehem Steel Co., 4 Cir.1960, 279 F.2d 419, 422, 82 A.L.R.2d 757; Luke v. Hirsch, S.D. N.Y.1968, 287 F.Supp. 75, 79; United States v. S.S. Soya Atlantic, D.Md.1963, 213 F.Supp. 7, 25, aff'd, 4 Cir., 330 F. 2d 732; Griffin, Collision § 233 (1949). The rule is founded upon the sound principle that "a ship has no right to put another ship into a situation of extreme peril, and then charge that other ship with misconduct." The Bywell Castle, 4 Prob.Div. 210 (1879); Griffin, Collision § 233 (1949). While this principle must be qualified to the extent that it does not exculpate all faults however flagrant, see A. H. Bull S.S. Company v. United States, 2 Cir.1929, 34 F.2d 614; Cuba Distilling Co. v. Grace Line, 2 Cir.1944, 143 F.2d 499 cert. denied, 323 U.S. 782, 65 S.Ct. 271, 89 L.Ed. 624, or

obviate the duty of a ship's master to act with a level head, United States v. M/V Wuerttemberg, 4 Cir.1964, 330 F. 2d 498, 504, it does require that allowances be made for "the position of the master at the time of the circumstances involved * * *." The H. F. Dimock, 1 Cir.1896, 77 F. 226, 229, and that his conduct not be judged by the standards of hindsight. China Union Lines, Ltd. v. A. O. Andersen & Co., 5 Cir.1966, 364 F.2d 769, 779, cert. denied, 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805; United States v. M/V Wuerttemberg, supra, at 504. Courts are not supposed to second guess parties in peril and expect from them the most precise judgments. Decisions under parlous conditions are expected to be and are naturally more reflexive than reflective. As said in The Ohio, 6 Cir.1898, 91 F. 547, 558, and more recently in The Irving S. Olds v. The John M. McKerchey, E.D.Mich.1946, 72 F.Supp. 256, 264:

> "The rule is well settled that when one vessel by her own wrongful maneuver places another in a situation of immediate peril, and the latter does not act with that promptness and accuracy [of judgment which might be expected] when there was complete presence of mind, and happens to delay or do something, which turns out to have been a mistake, she will not thereby become such a contributor to the mischief as to render her liable for damages. * * *"

Judging the conduct of the PURE OIL by these standards, we cannot say she is culpable for failure to more readily slacken her speed.

Since the findings of the district court are not clearly erroneous, but supported by adequate and credible evidence, the judgment below is affirmed.

Affirmed.

---

**6.** The PURE OIL as a vessel with the right-of-way had the obligation to maintain her course and *speed* until a collision was clearly imminent. See 33 U.S. C.A. § 206; The Boston Socony, 2 Cir. 1933, 63 F.2d 246, 248; Luke v. Hirsch, S.D.N.Y.1968, 287 F.Supp. 75, 78.